UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

BRIAN SMITH, individually                      CIVIL ACTION NO.
and on behalf of all others similarly situated,          3:18-CV-00135 (SRU)

     Plaintiff,

vs.

LIFEVANTAGE CORPORATION,
DARREN JENSEN, JUSTIN ROSE, and
RYAN GOODWIN,

     Defendants.
_____

## RICO CASE STATEMENT OF PLAINTIFF BRIAN SMITH

Plaintiff Brian Smith, a Connecticut resident, filed this putative class action on January 24, 2018, challenging Defendant LifeVantage Corporation's supposed "business opportunity" and multi-level marketing business model as an illegal pyramid scheme. Multi-level marketing (MLM) schemes like Defendant's have recently come under attack by plaintiffs and the Federal Trade Commission, as well as scrutiny by some of the nation's highest courts. *See*, *e.g.*, *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975); *Torres v. S.G.E. Mgmt., L.L.C.,* 838 F.3d 629 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 76 (2017). Plaintiff Brian Smith submits this Case Statement detailing his claims under the federal Racketeering Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961-68, pursuant to this Court's Standing Order in Civil RICO Cases. Plaintiff also asserts claims under the federal securities laws and various state laws, which are summarized below and are more fully set forth in Plaintiff's 70-page Class Action Complaint ("Cpt.") [ECF #1].

1.     **The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).**

Plaintiff specifically alleges violations of 18 U.S.C. §1962(c) & (d). *See* Cpt. [ECF #1] at Count One & Two. These RICO subsections, under the heading "prohibited acts" provide that:

1

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

In this case, the unlawful pattern of racketeering activity is the ongoing operation of an illegal pyramid scheme throughout the United States since at least 2008 (the "Pyramid Scheme"). Pyramid schemes are engines of fraud in which participants pay money into the scheme and are rewarded based on bringing more paying participants into the scheme. Cpt. at ¶ 3. The company and its promoters distribute money to the participants, with the top ranking promoters receiving larger shares of the distribution. *Id*. Because the money is distributed unevenly, because the highest ranking promoters keep a larger share for themselves, and because no legitimate earnings from product sales or services other than recruiting are generated by the scheme, the vast majority of participants lose money. *Id*.

LifeVantage induces people to become distributors ("Distributors") with sales pitches promising wealth and business independence, and its marketing and compensation system (the "Compensation Program") encourages Distributors to recruit others into the system with the same promises of wealth and business independence. Cpt. at ¶ 4. Distributors pay money to participate in the business opportunity, which funds LifeVantage's payments and "bonuses" to its promoters and other Distributors. *Id*. Despite LifeVantage's claims of retail sales, little money comes in to the system from actual retail users of LifeVantage products disconnected from the business opportunity or recruitment. *Id*. The majority of its retail sales are monthly sales to its Distributors purchasing product in order to participate in the Compensation Program and remain eligible to receive bonuses. *Id*. Distributors really can only make money by recruiting new Distributors -- which is the hallmark of a classic pyramid scheme. *Id*.

**2.** <u>**The identity of each defendant and the alleged misconduct and basis of liability of each defendant.**</u>

The defendants named in the Complaint (collectively "Defendants") are (1) LifeVantage Corporation, a Utah corporation headquartered in Sandy Utah ("LifeVantage"); (2) LifeVantage's CEO,

Darren Jensen; (3) LifeVantage's Chief Sales Officer, Justin Rose; and (4) LifeVantage's Chief Marketing Officer, Ryan Goodwin. *See* Cpt. at ¶¶ 18-21. The three individual defendants (collectively "Individual Defendants") are all believed to be residents of Utah. *Id.*

The alleged misconduct of each of these Defendants is the promotion and operation of the illegal Pyramid Scheme outlined above and below.

Each Defendant's liability arises from 18 U.S.C. §§ 1962(c) & (d), *supra.* RICO requires that a "person" violate its provisions. *Id.* A RICO "'person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A RICO person can be either an individual or a corporate entity. *Id.* Each Defendant is a RICO person because each is an individual or entity capable of holding a legal or beneficial interest in property. Cpt. at ¶ 122.

3. **The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.**

Pyramid schemes by their very nature are designed to benefit a small group of individuals at the top of the pyramid at expense of those at the bottom of the pyramid. Distributors, like Plaintiff, who play by the rules and do not enjoy inside knowledge or special deals, are rarely able to even break even; while the founders, executives, and promoters at the top of the pyramid regularly make millions of dollars. These founders, executives, and promoters (excluding the Individual Defendants) are all unnamed co-conspirators, and they have been specifically excluded from Plaintiff's proposed class definition because they all made money at the expense of Distributors like Plaintiff who lost money. *See* Cpt. at ¶ 112 (proposed class definition excludes "any purchaser who has not experienced a financial loss as a result of their LifeVantage Distributor enrollment").

The Complaint also identifies an exclusive group of promoters at the top of the LifeVantage pyramid known as the LifeVantage Field Advisory Board ("FAB"). Cpt. at ¶ 85. The FAB is also managed by the Individual Defendants. *Id.* It, among other things, "assists LifeVantage by explaining and promoting the LifeVantage opportunity to other Distributors, discusses business plans, and is actively involved in carrying out and orchestrating the scheme." *Id.*

Similarly, the Complaint alleges that some of LifeVantage's top ranking promoters work together and have created teams to provide training and materials to new Distributors and potential recruits.  Cpt. at ¶ 130.  For example: http://www.teamheart.net/, Team Heart's main web page, which is password protected to only those that join the team, offers earning guides, training academies, and weekly calls to its members.  *Id.*  Team Heart's "elites" are Pro 7 Distributors Kelly McCoy, Lisa Panton, Tanis MacDonald, Charlotte Venter, Pro 9 Distributors Rachel Jackson and Tara Wilson, and Executive Master Pro 10 Distributor Carrie Dickie, all of whom are additional unnamed co-conspirators.

In a conspiracy of this size, involving sales of roughly $156 million per year and over 61,000 Distributors in the U.S., Canada and abroad, there are undoubtedly dozens of other unknown co-conspirators who have helped to build, promote, and operate the Pyramid Scheme.  These persons, or possibly professionals, are all known to Defendants, but they cannot yet be identified by Plaintiff without the aid of discovery.

**4.     The identity of the alleged victims and the manner in which each victim was allegedly injured.**

The proposed class of alleged victims in this case (the "Class") are:

All purchasers of the LifeVantage "business opportunity." Excluded from the Class are all persons named as a Defendant (or a spouse of a Defendant or a related entity of Defendant) and any purchaser who has not experienced a financial loss as a result of their LifeVantage Distributor enrollment.

Cpt. at ¶ 112.  These purchasers, also known as LifeVantage Distributors, reside throughout the United States and they, like Plaintiff, are the unwitting participants of Defendants' illegal Pyramid Scheme who have all lost money.

**5.     A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim, which shall include the following information:**

**a.     The alleged predicate acts and the specific statutes which were allegedly violated;**

Plaintiff alleges that Defendants have each engaged in two or more acts of wire and/or mail fraud in furtherance of the Pyramid Scheme in violation of 18 U.S.C. §§ 1341 and 1343.  Cpt. at ¶ 145-49.

Mail and wire fraud are enumerated predicate acts that can constitute RICO "racketeering activity" under Section 1961(1)(D).  Cpt. at ¶ 145.

Mail fraud occurs when an individual devises a plot to defraud and subsequently uses the mail in furtherance of it. 18 U.S.C. § 1341.  The Defendants have transmitted, caused to be transmitted or invited others to transmit material, by mail or private or commercial carriers, such as UPS, for the purpose of executing their scheme or artifice to defraud in violation of RICO.  Cpt. at ¶ 146.  Likewise, Defendants distributed by UPS (mail) to many individuals literally hundreds of thousands or millions of pieces of promotional literature, statements, checks, and other mailings all between 2009 and the present.  *Id*.  Without limitation, each statement sent monthly to a Distributor is a mailing and an act of mail fraud, and each promotional literature sent by U.S. Mail is a mailing and an act of mail fraud.  *Id*.

Wire fraud occurs when an individual devises a plot to defraud and subsequently uses wire means in furtherance of it. 18 U.S.C. § 1343.  The Defendants have used the Internet since 2009 to disseminate, publish and spread the pyramid scheme throughout the United States and other foreign markets for the purpose of executing their scheme or artifice to defraud in violation of RICO.  Cpt. at ¶ 147.  They transmitted, caused to be transmitted and invited others to transmit, by means of wire in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing their scheme or artifice to defraud in violation of 18 U.S.C. §1343.  Without limitation, for example, each transmission of a video to be posted on YouTube, Vimeo, Facebook, or through Twitter, or establishment of a website to disseminate information about the pyramid scheme or transmission of signals, pictures or information to such website is a separate act of wire fraud.  Cpt. at ¶ 147.

**b.**    **The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

Each Defendant committed at least two predicate acts of mail and/or wire fraud which are detailed in the following tables:

**LifeVantage:**

| Mail/ Wire | Directed To | Where Published | Date or Date Range of Document | General Content |
|---|---|---|---|---|
| W | Pyramid Scheme Victims | https://www.lifevantage.com/opportunity/ | 2017 | Opportunity of a lifetime; The LifeVantage Compensation Plan and unlimited earning potential |
| W | Pyramid Scheme Victims | http://www.lvnmedia.com/home | 2017 | "training" videos by Top Earning Distributors; Placed "interview" emphasizing making money from being a distributor |
| W | Pyramid Scheme Victims | https://www.businessforhome.org/2013/08/lifevantage-awards-55-jeeps-to-top-distributors/ | 2013 | Placed "interview" emphasizing the rewards and money from being a Distributor |
| M/W | Pyramid Scheme Victims | https://www.lifevantage.com/ | 2009- current | Compensation Plan and Plan Highlights emphasizing financial rewards |

**Jensen:**

| Mail/Wire | Directed To | Where Published | Date or Date Range of Document | General Content |
|---|---|---|---|---|
| W | Pyramid Scheme Victims | https://www.youtube.com/watch?v=ikIe2TraGUA | 2015 | Jensen speaking at Elite Academy event, 8 Steps to unlock your true potential with LifeVantage |
| W | Pyramid Scheme Victims | https://www.youtube.com/watch?v=9Vlonax9eqE | 2016 | Jensen participating in weekly LV broadcast with Master Pro 10 Distributor – spread the word on LV |

**Rose:**

| Mail/Wire | Directed To | Where Published | Date or Date Range of Document | General Content |
|---|---|---|---|---|
| W | Pyramid Scheme Victims | https://www.youtube.com/watch?v=nhgymaxWy8g | 2015 | Reassuring the legitimacy of the business opportunity |
| W | Pyramid Scheme Victims | https://www.youtube.com/watch?v=kCowftf3PE0 | 2017 | Placed "interview" emphasizing making money from being a Distributor |

**Goodwin:**

| Mail/ Wire | Directed To | Where Published | Date or Date Range of Document | General Content |
|---|---|---|---|---|
| W | Pyramid Scheme Victims | https://www.youtube.com/watch?v=9F3pgn4QumA | 2016 | How to share the opportunity with others; recruiting |
| W | Pyramid Scheme Victims | https://www.youtube.com/watch?v=KIOgr8Lm6VU | 2016 | How to use social media to share the opportunity; recruiting |

Cpt. at ¶ 148.

> **c.    If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified;**

The particulars of Defendant's wire and mail fraud are set forth in the previous table.  The particulars of Defendant's securities fraud are as follows:

i.    *Who*.  Defendant LifeVantage sold millions of dollars (unregistered) securities disguised as "business opportunities."  The offer and sale of LifeVantage distributorships, such as those purchased by Plaintiff and the Class, is in connection with and constitutes the sale of a security.  Cpt. at ¶ 184.  Defendant LifeVantage is the offeror of such securities.

ii.    *What*.  Defendant LifeVantage made material misrepresentations and/or omissions in connection with the sale of distributorships to Plaintiff and the Class in violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  It

falsely represented that it was conveying a legal business opportunity, when, in fact, it knew or recklessly ignored the fact that it was selling, and Plaintiff was purchasing, an interest in an illegal pyramid scheme. Cpt. at ¶ 185. In the alternative, LifeVantage omitted material facts, *i.e.*, that it was selling an interest in a pyramid scheme, in connection with the sale of distributorships. Cpt. at ¶ 186.

Examples of LifeVantage's false statements include:

- Creating and disseminating the false impression that the Distributor program has "enormous" or "unlimited income potential" and that the Distributor network can make enormous money as a result of participating as a promoter for the program;

- Creating and disseminating the false impression that there are many available persons who will want to purchase LifeVantage products and that the purchase of a Distributor enrollment will enable the purchaser to make money from legitimate sales. In reality, each Defendant knew that sales of LifeVantage products are made almost exclusively to people already in the LifeVantage Pyramid; and

- Creating and disseminating the false impression that the success stories featured by LifeVantage are typical or, in some cases, even possible when Defendants each knew that the persons portrayed were being paid (unreal) amounts of money for committing an illegal activity and/or were assisted by Defendants in setting up a sufficiently large "downline" that the income generated was in fact large.

LifeVantage also omitted material facts for the purpose of and with the intention of perpetuating its fraudulent Scheme in order to obtain money from the victims. Cpt. at ¶ 153. Examples of these omissions include:

- Failing to reveal that the multilevel marketing program and its Distributor program are illegal pyramid schemes but instead propagating the statements and impression that it is a legal enterprise;

- Failing to reveal that under the Compensation Program the majority of the Distributors have and likely will lose their money;

- Failing to disclose that many of the top Distributor earners paraded by the company (at company-sponsored events and through other publicly disseminated events, videos, documents, and other media) as examples of what Distributors can hope to attain by following the LifeVantage Compensation Program were in fact already well established salespeople for other network companies who were recruited to bring large, preexisting "downlines" to LifeVantage by the company and were placed in their positions, aided in their attainment of their LifeVantage ranks, and/or otherwise compensated beyond what is paid to ordinary Distributors under the Compensation Program; and

- Failing to reveal that the company knowingly spread unreal and misleading accounts and claims of the success of its "Top Achieving" Distributors throughout the web, all in an effort to attract new Distributors but avoiding disclosing a direct connection between the statements and LifeVantage.

iii.    *Where*.  LifeVantage sold business opportunities throughout the United States, Canada and abroad, mainly through recruitment by existing Distributors and through online and in-person recruitment events.

iv.    *Why*.  After a series of financial losses over several years, LifeVantage turned to multilevel marketing in 2008.  Cpt. at ¶ 31.  Unlike its laborious and money-losing store-shelf retail model, LifeVantage's MLM sales model convinced hundreds of thousands of people to become LifeVantage customers.  *Id*.  But these customers were not paying for LifeVantage products; they were paying for the right to participate in LifeVantage's new business model.  *Id*.

To become profitable, LifeVantage created its own customer base by recruiting Distributors and requiring them to purchase LifeVantage's products in exchange for the right to participate in LifeVantage's supposed income-producing scheme, encouraging them to recruit other Distributors and to purchase ever more products, and redistributing the Distributors' money back to them. Cpt. at ¶ 39.  LifeVantage's focus is now on selling the LifeVantage program to recruits, not on selling LifeVantage's products to retail customers, and it successfully carries out this strategy by coupling its products with a dream of financial rewards through participation in the scheme.  *Id*.

Naturally, illegal schemes like this only work when they are concealed, which inevitably has lead to LifeVantage's committing of securities fraud.  Had LifeVantage revealed the truth of its operations and earnings as securities laws require, no one would have purchased distributorships or any of LifeVantage products and the LifeVantage Pyramid Scheme would have collapsed.

v.    *When*.  LifeVantage's Pyramid Scheme began in or about 2009 when it changed to an

MLM-oriented sales company and adopted the Compensation Program that

disproportionally rewards recruitment over product sales.

Plaintiff also alleges violations of the Federal Securities Act of 1933 for violations of 15

U.S.C. § 77l(a)(2), which imposes strict liability on issuers of false or misleading securities

offerings.  This claim is not required to be plead with particularly.

**d.      Whether there has been a criminal conviction for violation of the predicate acts;**

Plaintiff is not aware of any criminal convictions or investigations involving the Pyramid

Scheme alleged in the Complaint.

**e.      Whether civil litigation has resulted in a judgment in regard to the predicate acts;**

Plaintiff is not aware of any civil litigation which has resulted in a judgment involving

the Pyramid Scheme alleged in the Complaint.

**f.      The manner in which the predicate acts form a "pattern of racketeering activity";**

The predicate acts described above do indeed form a pattern of racketeering activity, as

evidenced by the fact that LifeVantage is still operating.  Inherent in every pyramid scheme is the risk of

collapse if the illegal nature of the enterprise becomes known.  Given RICO's penalties of treble

damages and joint and several liability, no one would knowingly join an illegal pyramid scheme and risk

becoming liable to those they recruit -- except, of course, for persons like Defendants who created the

scheme and are earning millions of dollars from its perpetuation.

Defendants promoted the Pyramid Scheme that, by its very nature, is a *per se* unlawful artifice to

defraud and obtain money by false pretenses.  Cpt. at ¶ 151.  Defendants promoted and successfully

expanded their Pyramid Scheme to victimize the named Plaintiff and each member of the putative Class.

*Id*.  Each of the enumerated acts of wire and mail fraud set forth above were done in furtherance of the

Pyramid Scheme and each is an act and part of Defendant's pattern of racketeering activity. *Id*.

11

  **g.**  **Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.**

  The predicate acts described above are all part of a common plan which has been continuing since 2009; that common plan is the Pyramid Scheme known as LifeVantage, including its Compensation Program coincident recruiting of others to support the Pyramid.

**6.**  **A detailed description of the alleged enterprise for each RICO claim, which shall include:**

  **a.**  **The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**

  RICO requires the involvement of a RICO "enterprise." 18 U.S.C. § 1964 (a-d). An "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(5). The enterprise itself is not the liable entity, rather it is the RICO person who conducts the affairs of the enterprise through a pattern of racketeering activity. *Id*.

  As described in ¶ 140 of the Complaint, LifeVantage, the Individual Defendants, and a variety of unnamed co-conspirators are distinct from each other and distinct from the enterprise. LifeVantage is distinct from the RICO enterprise because it is functionally separate, performs different roles within the enterprise and uses its separate legal incorporation to facilitate the racketeering scheme. *Id*. For example, LifeVantage operates legally in part by selling its products to consumers without operating as a pyramid scheme. *Id*. The Individual Defendants -- Jensen, Rose, and Goodwin -- are distinct from the enterprise because each operates in a managerial capacity for the corporation and each is simultaneously aware that a significant portion of the corporation's activity is illegal and structured in order to facilitate the racketeering activity, *i.e*., the Pyramid Scheme. *Id*. Similarly, each of the unnamed top earning professional promoters are distinct from one another and distinct from the enterprise. *Id*. Each operates as a separate legal entity; indeed, each is formally not an employee but an independent contractor by the express terms of the LifeVantage agreement each signs. *Id*. Each is aware of the scheme and willingly participates in it (by way of, for example, appearing in ads, and obtaining payments outside the

Compensation Program in order to masquerade as an "average" promoter), and each maintains a

separate legal presence, often using an incorporated company to receive payments. *Id*. The actual

separation between the company and these people/entities serves the function of convincing people like

Plaintiff and the Class that they too can become successful in legally selling the product. *Id*.

   **b.**  **The structure, purpose, function and course of conduct of the enterprise**;

  The *sin qua non* of a pyramid scheme is the recruitment of others into the scheme to enrich those

at the top of the pyramid. Here, the top of the Pyramid Scheme is comprised of LifeVantage, the

Individual Defendants, and LifeVantage's top-earning promoters.

  LifeVantage acknowledged the risk that the FTC or another governmental agency could

determine that LifeVantage was not complying with the existing laws and regulations. Cpt. at ¶ 149. Its

management, including the Defendants, took steps to masquerade the actual effect of the Compensation

Program in SEC filings and from their Distributors while knowing, because each Distributor's spending,

commissions, and purchases is tracked in real time and reports of these are made available to

management, that the vast majority of payments to Distributors is for recruiting, and that the vast

majority of Distributors lose money. *Id*.

   **c.**  **Whether any defendants are employees, officers or directors of the alleged enterprise;**

  Each Individual Defendant is an employee and officer of LifeVantage, and each is believed to

earn a sizeable salary from LifeVantage for the work they perform in furtherance of the Pyramid

Scheme. As executives of LifeVantage, the Individual Defendants have knowledge of the Scheme and

access to data which allows them to monitor Distributor payments and administer the Compensation

Program. Each is also in a position to whistle blow had they wanted to and their failure to alert the

authorities of the Scheme is evidence of their participation and continuing culpability.

  Moreover, each Individual Defendant understood that the operation of the business is an illegal

pyramid scheme if the Compensation Program paid substantially for recruiting others rather than for

product sales to legitimate, third-parties. Cpt. at ¶ 149. Defendant Rose even went as far as to reassure

Distributors and new recruits of the purported legitimacy of the business after a lawsuit was filed against MLM company, Vemma.  *Id.  See* https://www.youtube.com/watch?v=nhgymaxWy8g.  Jensen, Rose and Goodwin had at their disposal facts necessary to know that in all substantial respects LifeVantage was conducting its business similar to Vemma and Fortune Hi Tech, which were both shut down by the FTC.  *Id.*

> **d.     Whether any defendants are associated with the alleged enterprise;**

Each Individual Defendant is or was a top earning LifeVantage Distributor (promoter) with a preferred rank relative to new recruits.  These individuals did not obtain their rank by recruiting or selling products; instead, they were given or helped to obtain these ranks to ensure their silence and promotion of the Scheme.

> **e.     Whether plaintiff contends that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;**

At this point in time, LifeVantage and the enterprise are largely intertwined.  The Individual Defendants, in their roles as corporate officers, are also intertwined with the enterprise, as they are the architects and some of the largest beneficiaries of the Scheme.

> **f.     If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

LifeVantage and its MLM Compensation Program are effectively the enterprise and engine of fraud in this case.  LifeVantage and the Individual Defendants are each active, knowing participants in the fraud and Pyramid Scheme at issue.

**7.     Whether plaintiff contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

Prior to 2009 and prior to LifeVantage's transition into a multi-level multi-national marketing company, LifeVantage, the Individual Defendants, and many of LifeVantage's unnamed promoters and co-conspirators operated separately and largely independently of each other.  In 2009, that changed when Defendants and LifeVantage's top ranking promoters began acting as an "association-in-fact"

enterprise for the common purpose of engaging in a particular fraudulent course of conduct -- the establishment and perpetuation of an unlawful pyramid scheme in which hundreds of thousands of people have lost money.  Cpt. at ¶ 124.  The pattern of racketeering activity needed to build and expand this Pyramid Scheme was generally lead by Defendants and a few of LifeVantage's other top ranking promoters (*i.e*., un-named co-conspirators).  Cpt. at ¶ 126.

In 2009, LifeVantage "purchased" a number of the top industry promoters from other companies and entered into various side agreements and/or addendums to encourage these promoters and their already-built extensive downlines to join and help promote LifeVantage.  Cpt. at ¶ 127.  LifeVantage paid these individuals to associate with LifeVantage as LifeVantage's "top earners."  *Id*.  These hand-selected promoters were given preferential rank under the LifeVantage Compensation Program and they were paid huge sums of money for knowingly helping to expand the fraud and depth of the LifeVantage Pyramid.  *Id*.

Currently, Defendants and LifeVantage's top ranking promoters act as a single coordinated enterprise, run by Defendants under the auspices of the LifeVantage Corporation, trade name and Compensation Program.

**8.**    **The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.**

Prior to 2009, some persons currently unknown to Plaintiff sought to convert LifeVantage from a failing vitamin and supplement manufacturer into a multi-level multi-national illegal pyramid scheme. Today, the usual and daily activities of the enterprise include the running and administration of LifeVantage's corporate affairs and Compensation Program, along with the active promotion of the Pyramid Scheme by Defendants and LifeVantage's top ranking promoters and the redistribution of investment monies from LifeVantage Distributors to key individuals.

**9.      The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.**

LifeVantage and its officers benefit from the Pyramid Scheme by selling more than $150 million of worthless business opportunities and products to Distributors like Plaintiff each year.  Cpt. at ¶ 18. The Individual Defendants also benefit from their roles as LifeVantage promoters positioned at the very top of the LifeVantage Pyramid. As detailed in ¶ 78-82 of the Complaint, the top 4% of distributors (*i.e.*, the high ranking promoters) earned 72% of the compensation paid to all Distributors in 2016-2017 which amounts to a staggering $47,346,434.

**10.     The effect of the activities of the enterprise on interstate or foreign commerce.**

Defendant's alleged Pyramid Scheme has operated in the United States and in Canada, Australia, Japan, Hong Kong, Mexico, Netherlands, Germany, Thailand, and the United Kingdom.  Cpt. at ¶ 141. In furtherance of their roles as LifeVantage executives, all of the Individual Defendants have engaged in activities that affected interstate and foreign commerce, including multiple acts of wire and mail fraud detailed above.

**11.     If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

       **a.      The identity of the individual(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

       **b.      The use or investment of such income.**

The Complaint does not allege a direct violation of 18 U.S.C. § 1962(a), but most of activities in furtherance of the Pyramid Scheme detailed above are also prohibited by 18 U.S.C. § 1962(a).

**12.     If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

The Complaint does not allege a violation of 18 U.S.C. § 1962(b).

13. **If the complaint alleges a violation of 18 U.S.C. § 1962(b), provide the following information:**

    a.     **The individuals who are employed by or associated with the enterprise; and**

    b.     **Whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

The Complaint does not allege a violation of 18 U.S.C. § 1962(b).

14. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

The details of Pyramid Scheme and conspiracy challenged in this case are spelled out in ¶¶ 24-111 of the Complaint and the accompanying tables and exhibits.  The overarching theme of these allegations is that LifeVantage and its Compensation Program disproportionately reward Distributors for the recruiting of others while pressuring new recruits to the Scheme to load up on worthless product and program add-ons.  Cpt. at ¶ 50.  A crucial part of Compensation Program is the twelve level ranking system and a series of lucrative recruitment bonuses.  Cpt. at ¶ 52.  The higher the Distributor's rank, the more types of bonuses the Distributor is eligible to receive, and the greater the potential bonus.  *Id.*

Ascending the ranks depends upon a Distributor's monthly purchase volume ("PV"), monthly order volume ("OV"), the product purchased by junior Distributors, the number of "legs" in the Distributor's organization (the number of directly junior Distributors), and the distribution of OV across the legs.  Cpt. at ¶ 53.  The first five rows of the chart below summarize the ranking requirements:

| Royalty Commission (dynamically compressed) | Pro 1 | Pro 2 | Pro 3 | PREMIER | | | ELITE | | | MASTER | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PAID AS RANK | Pro 1 | Pro 2 | Pro 3 | Pro 4 | Pro 5 | Pro 6 | Pro 7 | Pro 8 | Pro 9 | Pro 10 | Executive | Presidential |
| Minimum Monthly PV(4) | 100 | 100 | 100 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Minimum Monthly OV | 1,000 | 2,500 | 5,000 | 10,000 | 20,000 | 50,000 | 100,000 | 200,000 | 500,000 | 1,000,000 | 2,000,000 | 5,000,000 |
| Minimum Leg Req. | 1 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 5 |
| Maximum % per Leg | 100 | 80/20 | 80/20 | 80/20 | 60/30/10* | 60/30/10* | 60/30/10* | 60/30/10* | 60/30/10* | 40/40/20 | 40/40/10/10 | 40/35/10/10/5 |
| UNILEVEL — Paid Monthly — 1st | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 2% |
| 2nd | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| 3rd | | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% | 9% |
| 4th | | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| 5th | | | | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| 6th | | | | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| 7th | | | | | 5% | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| 8th | | | | | | 5% | 5% | 5% | 5% | 5% | 5% | 5% |
| 9th | | | | | | | 2% | 2% | 2% | 2% | 2% | 2% |

**30% Generational Matching Bonus(6)**

| Enroller | Gen 1 | Gen 2 | Gen 3 | Gen 4 | Gen 5 |
|---|---|---|---|---|---|
| YOU | you earn 10% | you earn 5% | you earn 5% | you earn 5% | you earn 5% |

Earn a 10% match of all personally enrolled Distributor's Royalty Commissions generated from their downline sales. Earn 5% on generations 2, 3, 4, and 5 of personally enrolled Distributors Royalty Commission generated from their downline sales. To qualify for the generational matching bonus, you must have 100 in new purchase volume from Preferred Customers, Distributors or Retail Customers during a calendar month and 200 PV. (6)

**4% Elite Pool**  4% of total commissionable sales paid to qualified Pro 7 through Master Distributors.

Pro 7, 8, 9 & 10 share 1% | Pro 8, 9 & 10 share 1% | Pro 9 & 10 share 1% | Pro 10 Executive Presidential share 1%

(1) At least 40 PV must come from personal product purchases. The remaining PV can come from purchases made by Personally enrolled Preferred Customers and Retail Customers

(2) Receive a 30% or 40% Smart Start Bonus on all product purchased by new personally enrolled Distributors and Preferred Customers within their first calendar month, up to 1,000 CV. Product packs are available for purchase by both Preferred Customers and Distributors. Start Kits are sold separately and are required to begin your distributorship.

(3) "Paid Rank" is defined by the most recently completed and closed monthly commission period. You must have 200 PV to earn this bonus which may come from selling product to Preferred Customers, Retail Customers AND at least 40 PV in personal product purchases.

(4) Monthly minimum PV requirements may come from Preferred Customers, Retail Customers AND at least 40 PV in personal product purchases.

(5) 10% of the OV requirement must come from the equivalent of a third leg.

(6) Earn the full Generational Matching Bonus by being 'paid as' Pro 3 or higher and by maintaining a minimum of 200 PV, at least 40 of which must come from personal product purchases. The remaining PV can come from purchases made by personally enrolled Preferred Customers and Retail Customers. If your PV is between 100-199, you will earn half of the Generational Matching Bonus.

The LifeVantage Compensation Plan is unique. Any charts, illustrations and stated examples of income under the plan are potential in nature and also not based on the actual performance of any individual.

©2016 LifeVantage Corporation • 9785 S. Monroe St., Ste. 300, Sandy, UT 84070 • USA • 866.460.7241 • lifevantage.com
This form may not be altered without the express written consent of LifeVantage.

16110201.06
Revised 11/07/2016

The requirements for rank ascension encourage recruiting and product purchases. Cpt. at ¶ 54. Maintaining monthly PV explicitly requires personal product purchases. *Id*. Attaining OV levels encourages recruiting (because the more Distributors recruited, the more persons who will be buying product and contributing to OV) and personal product purchases (because personal purchases count toward OV). *Id*. Maintaining sufficient legs obviously encourages recruiting, as does the percentage OV requirements across the legs, because not only do the ranks require multiple legs (after Pro 1), but also enough legs must be sufficiently active. *Id*.

Bonuses favoring recruiting also incentivize perpetuation of the fraud and illegal Pyramid Scheme by most active Distributors.   These bonuses, include: (1) the Smart Start Bonus (described in ¶¶ 56-57 of the Complaint); (2) the Launch Bonus (described in ¶¶ 58-59 of the Complaint); (3) Royalty Commissions (described in ¶ 60 of the Complaint); (4) Generational Matching Bonuses (described in ¶¶

61-63 of the Complaint); (5) Elite Pool Bonuses (described in ¶¶ 64-65 of the Complaint); (6)

Achievement Bonuses (described in ¶¶ 66-67 of the Complaint); (7) and the My LifeVenture Program

(described in ¶¶ 68-69 of the Complaint), where top-performing Distributors are rewarded for recruiting

with brand name Jeeps, Harley Davidson motorcycles, ATV's, or other luxury toys, vacations or

shopping experiences.

**15.**     **The alleged injury to business or property.**

        The alleged injury to business or property is the receipt of monies from innocent people under

false pretenses.  Cpt. at ¶ 155.  This includes both the money spent to buy into the LifeVantage business

opportunity, as well as any money spent on worthless products and promotional materials.  *Id*.

        New recruits pay LifeVantage for the right to compete with LifeVantage's other Distributors.

Cpt. at ¶ 5. Each new recruit, including Plaintiff, purchased an expensive product package, costing

upwards of $1,000 and containing samples and other materials for their businesses.  *Id*.  "Distributor

enrollment packs" or "Product Packs" include the $1,200 Platinum Pack, the $600 Gold Master Edition

Pack, the $600 Gold Performance Edition Pack, and the $300 Silver Pack, in addition to the required

$50.00 "Start Kit."  Cpt. at ¶ 10.  New Distributors are also told or strongly encouraged to agree to an

automatic shipment program of $100 or more per month in product, secured by their credit cards, and to

pay for "training" and other accoutrements of being a Distributor.  *Id*.  The minimum automatic product

purchase is $40 per month.  Cpt. at ¶ 81.  LifeVantage's MLM system further encourages Distributors to

spend thousands of dollars in additional product purchases, event fees and expenses, renewal fees, and

other miscellaneous fees over the course of their distributorships.  *Id*.

**16.**     **The direct causal relationship between the alleged injury and the violation of the RICO**
        **statute.**

        The losses described above were proximately caused by Defendant's actions and the operation of

the LifeVantage Pyramid Scheme, and may be presumed from, among other things, the presumption that

no one would knowingly join an illegal pyramid scheme.  Cpt. at ¶ 155.  Fraud-based RICO claims, as

alleged here, do not require proof of first-party reliance to satisfy the causation element. *Torres v. S.G.E.*

*Mgmt., L.L.C.,* 838 F.3d 629, 638 (5th Cir. 2016), *cert. denied,* 138 S. Ct. 76, 199 L. Ed. 2d 24 (2017).

"Because pyramid schemes are *per se* mail fraud, which include inherent concealment about the

deceptive payment scheme, one who participates in a pyramid scheme can be harmed 'by reason of' the

fraud regardless of whether he or she relied on a misrepresentation of the scheme." *Id.* at 639. Thus,

participants' harm is a direct and foreseeable consequence of the pyramid structure due to the ultimate

collapse of the scheme, not because of any misrepresentations. *Id.* 639-40.

**17.**     <u>**The damages sustained for which each defendant is allegedly liable.**</u>

The RICO damages claimed in this case are the monies Class members paid to join Defendant's

illegal Pyramid Scheme, plus interest, statutory (treble) damages, and reasonable attorneys' fees. The

relevant statute of limitations and class period is four years, running from January 24, 2014 to the date of

judgment.

The precise amount lost by the Class sought to be certified has not yet been determined. Cpt. at ¶

156. It is believed that each of the unwitting participants in the pyramid scheme sought to be certified as

a Class, including Plaintiff, has lost $50 to well over $1,000 as a result of purchasing their

distributorship. *Id.* Upon information and belief, the precise amounts that each and every participant in

the pyramid scheme has (1) spent on costs associated with the Distributor "business opportunity" and (2)

received in commissions or bonuses or other payments from LifeVantage as a result, has been tracked,

maintained and accounted for by LifeVantage through a proprietary software database maintained by

InfoTrax Systems. *Id.* Thus, the precise loss of every Class member is easily capable of being

ascertained in this litigation, and the total business injury capable of being computed for the Class. *Id.*

In the aggregate these charges add up tens of millions of dollars in damages. LifeVantage's

"Compensation Summary," discussed and partially reproduced in ¶ 78 of the Complaint, indirectly

acknowledges that 94% of Distributors lose money. The top 4% of Distributors, including the

Individual Defendants, earned $47,346,434 between July 1 2016, and June 30, 2017, whereas the

remaining 96% of Distributors, like Plaintiff, were left to split $18,323,393. Cpt. at ¶ 80. With over

61,000 active LifeVantage Distributors, this works out to roughly $298 per Distributor / Class member, and it explains why Class members' investments in the LifeVantage business opportunity are essentially worthless. *Id.*

Additionally, the Complaint alleges that LifeVantage's products -- some of which are falsely advertised as remedies for various diseases -- are worthless snake oil with no real medicinal or nutritional value. Cpt. at ¶ 6. On its website, LifeVantage promotes itself as a "wellness and personal care company" founded on science-based health and skin care products. *Id.* Its leading and most heavily promoted product is called "Protandim." *Id.* While LifeVantage touts Protandim's uniqueness, it is nothing more than a scientific-sounding brand name. *Id.* It is not FDA approved and thus falls into the unregulated marketplace of homeopathic or "natural" remedies. *Id.* In other words, Protandim is just another product similar to all the other trendy vitamins and supplements available on retail shelves (which are offered at a much lower price). *Id.* Thus, LifeVantage must offer something more than just its products to make money. *Id.* That something more is the false hope of financial prosperity through LifeVantage's MLM opportunity, *i.e.*, participation in an illegal pyramid scheme disguised as a legitimate business opportunity. *Id.*

**18.** **A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.**

In addition to above-described RICO claims, Plaintiff also brings claims under the federal Securities Exchange Act of 1934 for violations of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, and the Federal Securities Act of 1933 for violations of 15 U.S.C. § 77l(a)(2). *See* Counts Five and Six of Plaintiff's Complaint. These claims, brought only against LifeVantage, seek to recover damages and statutory rescission for LifeVantage's concealment of facts and the risks associated with a securities investment in a potentially illegal pyramid scheme.

**19.** **A description of all pendent state claims alleged in the complaint, if any.**

Plaintiff's pendent state law claims are brought against each Defendant and include: (1) violations of Conn. Gen. Stat. § 42-145, which makes it unlawful to advertise or sell merchandise or

21

rights at a price, or with a rebate to the purchaser, contingent on the procurement of customers or sales (Count Three of Plaintiff's Complaint); (2) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), which prohibits promotion or recruiting in furtherance of a pyramid scheme (Count Four of Plaintiff's Complaint); and (3) unjust enrichment (Count Seven of Plaintiff's Complaint).

**20.    Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.**

RICO pyramid scheme cases are ideally suited for class certification because the question of whether a company is operating a fraudulent pyramid scheme is a merits issue subject to common proof. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016), *cert. denied,* 138 S. Ct. 76, 199 L. Ed. 2d 24 (2017). LifeVantage and the individual Defendants knowingly engaged in a fraudulent pyramid scheme and induced people to pay money to become distributors with promises of financial freedom and extravagant rewards. In reality, Plaintiff and the class of distributors he seeks to represent were cheated out of hundreds of thousands of dollars as a result of the hidden scheme.

Respectfully submitted,

/s/ Andrew Kochanowski
SOMMERS SCHWARTZ, P.C.
Andrew Kochanowski (phv 09446)
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
akochanowski@sommerspc.com

CARMODY TORRANCE SANDAK &
HENESSEY LLP
James K. Robertson, Jr. (ct05301)
Brian T. Henebry (ct10002)
John L. Cordani, Jr. (ct28833)
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
(203) 573-1200
jrobertson@carmodylaw.com
bhenebry@carmodylaw.com
jcordanijr@carmodylaw.com

REID COLLINS & TSAI LLP
J. Benjamin King (to be admitted Pro Hac Vice)
1601 Elm St., Suite 4250
Dallas, Texas 75201
(214) 420-8900
bking@rctlegal.com

R. Adam Swick (to be admitted Pro Hac Vice)
1301 S. Capital of Texas Hwy.
Bldg. C, Suite 300
Austin, Texas 78746
(512) 647-6100
aswick@rctlegal.com


*Attorneys for Plaintiff*


Dated: February 13, 2018


## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing, Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/ Andrew Kochanowski
Andrew Kochanowski (phv 09446)
Sommers Schwartz, P.C.

23