Thomas M. Melsheimer (*Pro Hac Vice*)
John C.C. Sanders, Jr. (*Pro Hac Vice*)
Rex A. Mann (*Pro Hac Vice*)
Lane M. Webster (*Pro Hac Vice*)
**WINSTON & STRAWN LLP**
2501 N. Harwood St., 17th Floor
Dallas, TX 75201
Phone: 214-453-6500
Fax: 214-453-6400
tmelsheimer@winston.com
jsanders@winston.com
rmann@winston.com
lwebster@winston.com

Robert S. Clark (Utah Bar No. 4015)
Jeffrey J. Hunt (Utah Bar No. 5855)
David C. Reymann (Utah Bar No. 8495)
Bryan S. Johansen (Utah Bar No. 9912)
**PARR BROWN GEE & LOVELESS**
101 S 200 E Ste 700
Salt Lake City, UT 84111
Phone: 801- 532-7840
Fax: 801-532-7750
rclark@parrbrown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com

*Counsel for Defendants*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BRIAN SMITH, individually, MICHAEL ILARDO, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFEVANTAGE CORP., a Delaware corporation, and DARREN JENSEN, an individual,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>(ORAL ARGUMENT REQUESTED)<br><br>Case No. 2:18-cv-00621-DN-PMW<br><br>Judge David Nuffer |

# I. INTRODUCTION

To the extent Plaintiffs respond to the arguments in Defendants' Motion at all, Plaintiffs rely on overturned case law, misconstrued legal standards, and conclusory statements unsupported by their own allegations or law. First, Plaintiffs attempt to salvage their securities claims by asking the Court to depart from established Tenth Circuit pleading standards. The Court should decline to do so. Further, Plaintiffs do not legitimately dispute that their Securities Act claims are barred by the statute of limitations and that they pleaded no public offerings subject to the Securities Act.

Plaintiffs have likewise failed to rebut Defendants' arguments against their antitrust claims, which are based on a purported patent monopoly theory rejected by the Supreme Court. Plaintiffs' *Walker Process* claim should also be dismissed because Plaintiffs have not established standing, fraud on the PTO, or that Defendants took any actions to enforce their patents.

Finally, Plaintiffs' unjust enrichment claim cannot survive in light of precedent barring such claims where, like here, a contract exists and the claimant has received some consideration. In short, Plaintiffs' Response does not meaningfully refute the arguments in Defendants' Motion to Dismiss, and the Amended Complaint ("FAC") should be dismissed with prejudice.

# II. ARGUMENT

## A. PLAINTIFFS' SECURITIES FRAUD CLAIMS MUST BE DISMISSED

Plaintiffs ask the Court to depart from Tenth Circuit law establishing the standard for pleading fraud. Plaintiffs argue that pyramid schemes are inherently deceptive, and therefore generalized allegations of a scheme should be sufficient to sustain their claims. As Plaintiffs admit, however, the Tenth Circuit has never adopted such a proposition.[1] Rather, the Tenth Circuit requires that Plaintiffs' claims be supported by ***specific*** misrepresentations or omissions.[2]

[1] *See* Pls.' Resp. to Defs.' Mot. to Dismiss the First Am. Compl., at 2-6 (Dec. 17, 2018), ECF No. 98 ("Response").
[2] *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1225 (10th Cir. 1996); *see also* 15 U.S.C. § 78u-4(b)(1).

Plaintiffs fail to allege any specific misrepresentations.[3] Accordingly, the Court should follow the Tenth Circuit's pleading standards and dismiss Plaintiffs' securities fraud claims.

**1. Plaintiffs Do Not Allege that LifeVantage Made Any Materially False or Misleading Statements or Omissions**

Plaintiffs' Response fails to address Tenth Circuit case law indicating that each statement relied upon in the FAC is the exact "sort of soft, puffing statements, incapable of objective verification, that courts routinely dismiss as vague statements of corporate optimism."[4] Even where a scheme is alleged, the Tenth Circuit requires Plaintiffs to "set forth the time, place and contents of the false representation" or deceptive conduct.[5] As explained in Defendants' Motion, Plaintiffs have not done so and their claims fail on this basis alone.[6]

**2. Plaintiffs' Scienter Allegations Are Inadequate to Support Count One**

Plaintiffs similarly fail to show scienter. Plaintiffs' Response fails to address the holding in *Fleming* that allegations of "generalized motives shared by all companies," such as those relied upon by Plaintiffs, are "insufficient."[7] Plaintiffs continue to improperly rely on allegations regarding incentives for recruitment, product promotions, and the benefits of maintaining an appearance of profitability—the precise type of allegations the Tenth Circuit has found constitute "generalized motives shared by all companies" that cannot support Plaintiffs' claim.[8]

Plaintiffs also fail to address the holding in *Sanchez*, which establishes that Plaintiffs cannot allege scienter by asserting knowledge of falsity based on access to mere raw data.[9]

---

[3] *See* Response at 4-6; *see also* Defs.' Mot. to Dismiss, at 6-8 (Nov. 5, 2018), ECF No. 94 ("MTD").
[4] *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121-22 (10th Cir. 1997); MTD at 7.
[5] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted).
[6] MTD at 5-7.
[7] *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1269 (10th Cir. 2001); *cf.* Response at 7-8 (citing *Kerrigan v. Visalus, Inc.*, No. 14-cv-12693, 2016 WL 892804, at *9, *15 (E.D. Mich. Mar. 9, 2016) (applying out-of-circuit standards and involving "detailed allegations" establishing individuals' knowledge of operation's illegal scheme).
[8] *See* Response at 7-8; *Fleming*, 264 F.3d at 1262. As explained in Section II.C.3, *infra*, Plaintiffs have failed to allege fraud on the PTO with particularity and cannot rely on such inadequately pleaded assertions to establish scienter.
[9] *Sanchez v. Crocs, Inc.*, 667 F. App'x 710, 720-21 (10th Cir. 2016); *cf.* Response at 7-8.

Nevertheless, Plaintiffs cite only to raw data in the form of "real-time transaction data" and "transaction-level data" as the source of Defendants' knowledge.[10] Because Plaintiffs do not offer any sufficient allegations indicating Defendants' knowledge of any purported falsity, they have not adequately alleged scienter.[11] Plaintiffs' securities fraud claims should therefore be dismissed.

**B. PLAINTIFFS' COUNT TWO IS UNTIMELY AND INAPPLICABLE HERE**

**1. The Statute of Limitations Bars Plaintiffs' Section 12(1) Claim**

Plaintiffs do not dispute the applicability of the statute of repose, which prohibits liability "more than three years after the security was bona fide offered to the public."[12] The statute of repose began running in 2008, when the distributorships were first offered, and terminated before 2012. The statute therefore bars Plaintiffs' Section 12(1) claim.

To avoid this result, Plaintiffs attempt to delay running of the statute by asserting that the Compensation Plan and Policies and Procedures amendments somehow "fundamentally altered the securities" and restarted the date.[13] But Plaintiffs cite inapt law and ignore the circumstances.[14] The repose period restarts only if an amendment encompasses a "fundamental change in the information set forth in the registration statement."[15] In fact, even "incorporation of the same false [information] into later-filed financial documents by definition does not reflect a fundamental change."[16] Plaintiffs have not pointed to such change, and cannot. Accordingly, Plaintiffs' claim

---

[10] *See* Response at 7-8.
[11] *See Fleming*, 264 F.3d at 1264 (scienter requires allegations that "the danger of misleading buyers" was "actually known or so obvious that any reasonable man would be legally bound as knowing") (quotations omitted).
[12] 15 U.S.C. § 77m.
[13] *See* Response at 8.
[14] Response at 8-9; *see Sakai v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1117 (D. Nev. 2014) (finding the limitations restarted only when the company "offered a new series of securities and issued new certificates"); *In re Municipal Mortg. & Equity, LLC Sec. and Deriv. Litig.*, 876 F. Supp. 2d 616, 656-57 (D. Md. 2012) (claims barred by the statute of repose).
[15] *In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2010 WL 537740, at *2 (E.D. Wash. Feb. 8, 2010) (explaining that a fundamental change includes only major changes in the issuer's operations).
[16] *Gaynor v. Miller*, 273 F. Supp. 3d 848, 865 (E.D. Tenn. 2017) (dismissing complaint where the claims were based on alleged fraud in the original registration statement that remained unchanged in subsequent amendments).

is time-barred, or at least, should be limited to the date after a material amendment to the Compensation Plan occurred—although Plaintiffs have not even identified such a date.

**2. The Distributorships Alleged in the FAC Are Not Public Offerings, Thereby Obviating Plaintiffs' Count Two**

Count Two should be dismissed because Plaintiffs fail to allege the existence of a public offering or registration statement, which is a prerequisite. Plaintiffs acknowledge the Securities Act requires a registration statement only when there is a "public offering," and that a prospectus exists only where a registration statement is required.[17] Therefore, Plaintiffs' claims for failure to register under Section 12(a)(1) and for making misleading statements "by means of a prospectus" under Section 12(a)(2) require allegations of a "public offering."[18] Plaintiffs allege none.

Plaintiffs erroneously assume that the distributorships are "public offerings" merely because anyone can become a distributor.[19] "Public offering" is a term of art in the Securities Act that "turn[s] on whether the particular class of persons affected needs the protection of the [Securities] Act" regardless of the number of people offered the transaction.[20] The Tenth Circuit has held that a transaction is not a public offering "when an offeree has had sufficient access to information similar to that made available to the offeree in a registration statement."[21]

Here, the distributors have access to information that would be available in a registration statement. Because LifeVantage is a public company, offerees of the distributorships have access to the exact information available in a registration statement through LifeVantage's filings with

[17] *See* Response at 9; *see also* *Gibson v. Vanisi*, No. 2:03-cv-328-PGC, 2005 WL 165382, at *5 (D. Utah Jan. 25, 2004) ("Section 12 applies only to public offerings").
[18] *See* *Gibson*, 2005 WL 165382, at *5 (dismissing claims for failing to plead a public offering).
[19] *See* Response at 9-10 (failing to address the requirements of a public offering and citing *Bridges v. Geringer*, No. 5:13-cv-01290-EJD, 2015 WL 2438227, at *5 (N.D. Cal. May 21, 2015) (finding a public offering without identifying any specific allegations indicating a public offering)).
[20] *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953) (holding "there is no warrant for superimposing a quantity limit on private offerings").
[21] *Andrews v. Blue*, 489 F.2d 367, 373 (10th Cir. 1973).

the SEC. Further, the extensive contractual relationships alleged between distributors and LifeVantage are more akin to private transactions than a public offering. Accordingly, the Court should follow *Tanner* and *Gibson* and dismiss Plaintiffs' Count Two for failing to establish that there was a public offering subject to the Securities Act.[22]

### C. PLAINTIFFS' ANTITRUST CLAIMS ARE BASED ON OVERRULED CASE LAW AND PRECLUDED BY THEIR OWN ADMISSIONS

#### 1. Plaintiffs' Own Pleading Demonstrates the Implausibility of Their Proposed Relevant Market and Fails to Support an Inference of Monopoly Power

Plaintiffs base their antitrust claims on a purported "patent monopoly" theory, alleging that patents confer monopoly power on LifeVantage in a product market consisting solely of "natural extracts of herbs in the formula marketed as 'Protandim.'"[23] But Plaintiffs ignore the 2006 Supreme Court case, *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, that explicitly overturned the presumption that patents automatically confer market power.[24] The cases Plaintiffs cite predate *Illinois Tool Works*, and further demonstrate that Plaintiffs were required to address reasonably interchangeable alternatives rather than presume that a patent-based right "necessarily established market power."[25] Since *Illinois Tool Works*, courts in this Circuit and elsewhere have consistently rejected proposed market definitions that rely solely on the existence of patents.[26]

Thus, LifeVantage's patents do not absolve Plaintiffs of their obligation to plead facts

---

[22] *See Tanner v. Johnston*, No. 2:11-cv-28 TS, 2013 WL 3776268, at *11 (D. Utah July 17, 2013) (dismissing claim for failing to allege a public offering because "Plaintiffs offer[ed] no more than the bare legal conclusion that the investment summary [was] 'a written prospectus'"); *Gibson*, 2005 WL 165382, at *5.
[23] Response at 11-12; FAC ¶ 324.
[24] MTD at 21 n. 110 (citing *Ill. Tool Works Inc. v. Indep. Ink., Inc.*, 547 U.S. 28, 31, 42-43 (2006)).
[25] *See* Response at 11 n. 62 (*citing Eastman Kodak v. Image Tech. Sers., Inc.*, 504 U.S. 451, 481 (1992) (a single-product market is valid only where no viable substitutes for the product exist); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998) ("It is not presumed that the patent-based right to exclude necessarily established market power in antitrust terms.")).
[26] *See Suture Express, Inc. v. Owens & Minor Distribution, Inc.*, 851 F.3d 1029, 1039 n. 5 (10th Cir. 2017); *In re Cox Enter., Inc.*, 871 F.3d 1093, 1100 (10th Cir. 2017); *Delano Farms Co. v. Cal. Table Grape Com'n*, 655 F.3d 1337, 1351-52 (Fed. Cir. 2011).

capable of supporting monopoly power in a facially plausible relevant market.[27] Plaintiffs' exclusion of reasonable substitutes from their market definition is fatal to Plaintiffs' claims here, given their admission that "[a]ny consumer who wished to take an anti-oxidant in the 'Protandim' formula without purchasing it from LifeVantage could do so."[28] Plaintiffs have failed to explain how such contradictory allegations can withstand a motion to dismiss.[29]

Similarly, Plaintiffs' argument that LifeVantage's purported "pricing power" supports an allegation of monopoly power contradicts Plaintiffs' admissions that there is "little to no opportunity to sell [Protandim] at a profit" given that "***substitute*** natural antioxidants exist in much cheaper alternatives."[30] Plaintiffs thus have not alleged any facts from which to infer that LifeVantage has "the ability to raise prices above those that would be charged in a competitive market," which is the test for monopoly power.[31]

As a final resort, Plaintiffs argue that courts can ***never*** properly dismiss monopolization claims for failure to plead a plausible relevant market.[32] This is not true. Courts routinely dismiss antitrust claims where the plaintiff fails to plausibly define a relevant market or allege market power.[33] No case cited by Plaintiffs holds to the contrary.[34] Accordingly, Plaintiffs' repeated admissions demonstrating the existence of substitutable products and the lack of pricing power by LifeVantage preclude both their *Walker Process* and conspiracy claims.[35]

---

[27] *Ill. Tool Works*, 547 U.S. at 42-43; *Walker Process Equip., Inc. v. Food Mach. & Chem.*, 382 U.S. 172, 177 (1965).
[28] FAC ¶ 326; *see also id.* at ¶¶ 95; 327; MTD at 20-21 (citing FAC ¶¶1, 48, 53, 183-84, 237, 236-27).
[29] *Compare* MTD at 20-21, *with* Response at 11-12.
[30] *See* FAC ¶¶ 95; 101 (emphasis added).
[31] *See Westman Com'n Co. v. Hobart Intern., Inc.*, 796 F.2d 1216, 1225 (10th Cir. 1986) (citations omitted).
[32] Response at 11-12.
[33] *See, e.g.*, *TV Comm's Network, Inc. v. Turner Netweork Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992); *U.S. Gen., Inc. v. Draper City*, No. 2:05-cv-917-TS, 2006 WL 1594184, at *3 (D. Utah June 7, 2006).
[34] *See* Response at 11-12 nn. 63-37; *Telecor Comm's, Inc. v. S.W. Bell Tel. Co.*, 305 F.3d 1124 (10th Cir. 2008) (holding that market definition must accurately identify which types of customers that were injured); *Reazin v. Blue Shield of Kan.*, 899 F.2d 951 (10th Cir. 1990) (affirming jury instructions which did not require specific findings regarding the relevant market); *Westman*, 796 F.2d 1216 (10th Cir. 1986) (requiring a full economic analysis of the relevant market at the merits stage).
[35] *See Auraria Stud. Hous. at the Regency, LLC v. Campus Vill. Aparts., LLC*, 843 F.3d 1225, 1243-44 (10th Cir.

**2. Plaintiffs Have Not Alleged That They Suffered a Plausible Antitrust Injury**

Plaintiffs' inability to cite any allegations supporting a cognizable antitrust injury—a fundamental element of Plaintiffs' claims—likewise necessitates dismissal.[36] If anything, Plaintiffs allege that their injuries flowed from ***too much*** competition with "cheaper alternatives," preventing Plaintiffs from selling at a profit, rather than any restriction placed on competition.[37]

Nor can Plaintiffs' antitrust injury be presumed based on the mere existence of patents alone.[38] Rather, Plaintiffs must show that the claimed injuries are attributable to the anticompetitive effects of the conduct being challenged.[39] The FAC alleges the exact opposite, conceding that competition has ***heightened*** since LifeVantage's entry, necessitating dismissal.[40]

Plaintiffs failed to respond to Defendants' argument that they lack antitrust injury.[41] Accordingly, Plaintiffs have waived any argument to the contrary and the Court should dismiss Plaintiffs' antitrust claims for failure to plead antitrust injury and standing.[42]

**3. Plaintiffs Have Failed to Allege Fraud on the PTO with Particularity**

Plaintiffs do not allege the purported fraud on the PTO with the particularity required by Rule 9(b). They fail to plead facts that would tend to establish that there was any false statement made, that the purported fraud was material, or that Defendants intended to deceive the PTO.[43]

As an initial matter, Plaintiffs cannot plausibly establish that Defendants misrepresented

---

2016) (holding that Section 2 claims must be supported by a legally cognizable market definition).

[36] *See Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249, 1267 (10th Cir. 2006); *see also* MTD at 22-23.

[37] FAC ¶¶ 95, 101.

[38] *See, e.g.*, *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, No. 5:03-00887-MRP (PLA), 2009 WL 8727693, at *16 (C.D. Cal. Feb. 17, 2009).

[39] *See Lantec v. Novell, Inc.*, 146 F. Supp. 2d 1140, 1153 (D. Utah 2001); *see also Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1280-82 (10th Cir. 2012); *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006).

[40] *See* MTD at 22-23; *Brunswick Corp. v. Pueblo Bowl-O-Mat., Inc.*, 429 U.S. 477, 488-90 (1977).

[41] *Compare* MTD at 22-23, *with* Response at 11.

[42] *See, e.g.*, *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990); *see also Rondigo, LLC v. Twp. of Richmond, Mich.*, 522 F. App'x 283, 286 (6th Cir. 2013).

[43] MTD at 11-17.

the identity of the inventors of either the '461 Patent or the '808 Patent.[44] Plaintiffs continue to assert that CereMedix should have been listed as an inventor of the '461 Patent, but fail to respond to how CereMedix's 14-substance formulation could possibly be the same invention as the 5-substance formula set forth in the '461 Patent. Indeed, they specifically allege that it is not.[45] Instead, Plaintiffs claim that Protandim was not "novel" enough to receive a patent.[46] But this is an argument of invalidity, not fraud.[47]

In addition, Plaintiffs have failed to establish the materiality of Defendants' purported omission of the prior CereMedix application for the '899 Patent. Plaintiffs assert ipse dixit that the FAC "explains why the undisclosed art was material in the same way that the Federal Circuit routinely finds materiality" without any citation to the FAC.[48] The single conclusory sentence addressing materiality in the FAC does nothing to support materiality under the law.[49]

Finally, Plaintiffs claim, without citation, that Myhill and Driscoll "had every incentive to suppress the CereMedix creation of Protandim to the PTO."[50] But any purported "incentive" falls far short of the "specific intent" that Plaintiffs must allege. The Court must conclude that the "***single most reasonable inference***" is that Defendants made a "deliberate decision to withhold a material reference or to make a knowingly false misrepresentation."[51] Plaintiffs do not allege that Myhill and Driscoll were ***even aware*** of the CereMedix application during the prosecution of the '461 Patent, and thus fail to meet this standard.[52]

---

[44] *Id.* at 12-15.
[45] FAC ¶¶ 188; 190-91; 207.
[46] Response at 15.
[47] *See, e.g.*, *Farag v. Health Care Serv. Corp.*, No. 17-C-2547, 2017 WL 2868999, at 3-8 (N.D. Ill. July 5, 2017).
[48] Response at 13-14.
[49] *Compare* FAC ¶ 224, *with Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1053 (D. Colo. 2017).
[50] Response at 13-16.
[51] *Therasense v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (emphasis added); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009) (internal quotation marks omitted).
[52] FAC at ¶¶ 202-205.

**4. Plaintiffs Do Not Allege that LifeVantage Engaged in Exclusionary Conduct**

Plaintiffs' *Walker Process* claim should also be dismissed on the independent basis that the FAC fails to allege that Defendants took any action to enforce their patent rights.[53] Such enforcement—typically in the form of patent infringement litigation—is a prerequisite to any *Walker Process* claim.[54] Plaintiffs' claim instead relies on unsupported, conclusory allegations that Defendants "widely publicized" their patents.[55] But advertising one's own patented product is a far cry from the exclusionary conduct required to sustain a *Walker Process* claim.[56]

As the Federal Circuit clarified in *Hydril*, sufficient enforcement may exist where the patentee makes "[t]hreats of patent litigation against [competitor's] customers . . . with a reasonable likelihood that such threats will cause the customers to cease dealing with their supplier."[57] *Hydril* does not support the proposition that publicizing a patent constitutes enforcement under *Walker Process*.[58] In *Hydril*, plaintiff alleged that defendant's counsel informed plaintiff's customers that they purchased infringing products and threatened to sue.[59]

Here, Plaintiffs have failed to allege even the threat of legal action. In this regard, Plaintiffs' vague reference to a 2013 lawsuit where Defendants allegedly "sued a consumer advocate" is unavailing.[60] In *LifeVantage Corp. v. MacFarland*, the case Plaintiffs appear to describe, LifeVantage asserted defamation claims against a website publisher who posted scores of libelous statements attacking the company and accusing it of criminal activity.[61] Neither the

---

[53] *See* MTD at 18, nn. 91, 92; Response at 16-17.
[54] *See In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 317 (N.D. Cal. 2007).
[55] *See* Response at 13; 16-17.
[56] *See* MTD at 19; *see also Baker Hughes Oilfield Ops., Inc. v. Reedhycalog UK, Ltd.*, No. 2:05-CV-931 TS, 2008 WL 345849, at *2-3 (D. Utah Feb. 6, 2008) (holding letters notifying plaintiff of issued patents do not rise to level of exclusionary conduct).
[57] *Hydril Co. v. Grant Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007).
[58] Response at 17.
[59] *Hydril*, 474 F.3d at 1346-47.
[60] *Id*. at 16; FAC ¶ 3.
[61] Case No. CV 521137 (Cal. Super. Ct. San Mateo Cty. Apr. 12, 2013).

validity of the company's patents nor the rights they confer were ever at issue in the litigation.[62] Thus, the 2013 lawsuit cannot in any sense be considered "enforcement" of LifeVantage's patents.

Absent allegations that Defendants attempted to enforce its patents against anyone, Plaintiffs' *Walker Process* claims must be dismissed with prejudice.[63]

**D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS**

Plaintiffs' unjust enrichment claim fails because Plaintiffs had an express agreement with LifeVantage and received products in exchange for the fees paid to LifeVantage.[64] Utah law is clear that a claim cannot succeed where the plaintiff receives consideration as enrichment must be "***something for nothing***."[65] Acknowledging that Plaintiffs have received consideration through at least the products and chance for business success, Plaintiffs argue in the alternative that the contract is void or the Court should use its "broad discretion."[66] However, Plaintiffs rely on century-old law that is not the controlling standard and none of the cases they cite support their position.[67] The Court should dismiss Plaintiffs' unjust enrichment claim based on with Utah law.

## III. CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion to Dismiss, Defendants respectfully request that this Court dismiss the FAC in its entirety with prejudice.

---

[62] *See* MTD at 18-19.

[63] *See id.*; *Walker Process*, 382 U.S. at 177; *Hangards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993-96 (9th Cir. 1979).

[64] *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1131 (10th Cir. 2008).

[65] *Emergency Phys. Integ. Care v. Salt Lake Cty.*, 167 P.3d 1080, 1086-87 (Utah 2007) (emphasis added); *see also Richards v. Brown*, 222 P.3d 69, 79 (Utah Ct. App. 2009).

[66] *See* Response at 18-19.

[67] *See Peterson v. Sunrider Corp.*, 48 P.3d 918, 930 (Utah 2002); *see also Com. Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977) (dismissing unjust enrichment claim because "when an express agreement exists one may not be implied"); *E & M Sales v. Divers. Metal Prods.*, 221 P.3d 838, 843-44 (Utah Ct. App. 2009) (allowing unjust enrichment claim where express contract exists only when the claim depends "on an alleged separate representation"); *Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998) (not involving an express agreement or addressing consideration); *Rawlings v. Rawlings*, 240 P.3d 754, 768 (Utah 2010) (same); *Vander Veur v. Groove Entm't Techs.*, No. 20160153-CA, 2018 WL 3764727, at *11-12 (Utah Ct. App. Aug. 9, 2018) (finding no express agreement and not addressing consideration); *Davies v. Olson*, 746 P.2d 264, 267 (Utah Ct. App. 1987) (examining meeting of the minds only where no express contract existed).

DATED: January 10, 2019

Respectfully submitted,

By: /s/ *John C.C. Sanders, Jr.*

Thomas M. Melsheimer
(Admitted *Pro Hac Vice*)
TX Bar No. 13922550
tmelsheimer@winston.com
John C.C. Sanders, Jr. (Admitted *Pro Hac Vice*)
TX Bar No. 24057036
jsanders@winston.com
Rex A. Mann (Admitted *Pro Hac Vice*)
TX Bar No. 24075509
rmann@winston.com
Lane M. Webster (Admitted *Pro Hac Vice*)
TX Bar No. 24089042
lwebster@winston.com
**Winston & Strawn LLP**
2121 N. Pearl St., Suite 900
Dallas, TX 75201
Phone: 214-453-6500
Fax: 214-453-6400

Robert S. Clark
Jeffrey J. Hunt
David C. Reymann
Bryan S. Johansen
**PARR BROWN GEE & LOVELESS**
101 S 200 E Ste 700
Salt Lake City, UT 84111
Phone: 801- 532-7840
Fax: 801-532-7750
rclark@parrbrown.com
jhunt@parrbrown.com
dreymann@parrbrown.com
bjohansen@parrbrown.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of January, 2019, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** was served via the Court's CM/ECF System.

/s/ *Rex Mann*
Rex Mann