IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN SMITH, individually, <br> MICHAEL ILARDO, individually, <br><br> Plaintiffs, <br> v. <br><br> LIFEVANTAGE CORPORATION, a corporation; and DARREN JENSEN, an individual, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' [94] MOTION TO DISMISS** <br><br> Case No. 2:18-cv-00621 DN PMW <br><br> District Judge David Nuffer |

Defendants LifeVantage Corporation and Darren Jensen moved to dismiss (the "Motion")[1] Plaintiffs Brian Smith and Michael Ilardo's First Amended Class Action Complaint.[2] Plaintiffs responded and requested leave to file an amended complaint if the Motion to Dismiss is granted.[3] Defendants replied in support of the Motion.[4]

The Complaint alleges securities fraud, sale of an unregistered security, antitrust violations, and unjust enrichment. These claims stem from Plaintiffs' involvement as Distributors of LifeVantage products.[5] Defendants' Motion to Dismiss[6] argues Plaintiffs have not pleaded fraud with the exacting degree of particularity demanded by Fed. R. Civ. Pro. 9(b)

---

[1] Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), docket no. 94, filed Nov. 5, 2018.

[2] Plaintiffs' Amended Complaint ("Complaint"), docket no. 75, filed Sept. 20, 2018.

[3] Plaintiffs' Response to Defendants' Motion to Dismiss the First Amended Complaint, docket no. 98, filed Dec. 17, 2018.

[4] Defendants' Reply in Support of Motion to Dismiss the First Amended Class Action Complaint, docket no. 100, filed Jan. 10, 2019.

[5] Complaint ¶ 1-8.

and the Private Securities Litigation Reform Act ("PSLRA").[7] Defendants also argue that Distributorship agreements are not required to be registered as securities.[8] Defendants further argue that Plaintiffs have failed to plead sufficient facts to state a claim for antitrust violations or unjust enrichment.[9]

Under a scheme liability framework, Plaintiffs have plausibly stated a claim for violation of Rule 10b-5 of the Securities Act. However, Plaintiffs have failed to plausibly allege facts stating claims for sale of an unregistered security; violation of the Sherman and Clayton Acts; and unjust enrichment. Therefore, Defendants' Motion to Dismiss[10] is DENIED in part and GRANTED in part.

**Contents**
FACTUAL BACKGROUND ........................................................................................................ 3
STANDARD OF REVIEW ......................................................................................................... 4
DISCUSSION ............................................................................................................................... 5
    I.    Plaintiffs Allege Sufficient Facts to State a Securities Exchange Act 10(b) Rule 10b-5 Claim ............................................................................................................. 5
        A.    A Distributorship in LifeVantage qualifies as a security. ........................... 5
        B.    Requirements to state a claim under Section 10(b) and Rule 10b-5. .......... 6
        C.    Plaintiffs sufficiently allege a 10b-5 claim under scheme liability ............. 7
        D.    Plaintiffs sufficiently allege scienter. ...................................................... 10
    II.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Sale of Unlicensed Securities ................................................................................................................ 13
    III.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Antitrust Violations ............................................................................................................................... 14
        A.    Plaintiffs fail to sufficiently allege that Defendants committed a fraud on the USPTO ............................................................................................... 14
        B.    Plaintiffs have failed to allege sufficient facts that satisfy the remaining elements of a *Walker Process* Claim ..................................................... 16
    IV.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Unjust Enrichment 17
ORDER ...................................................................................................................................... 18

---

[7] *Id*. at 4.

[8] *Id*. at 10.

[9] *Id*. at 11, 24.

[10] Docket no. 94, filed Nov. 5, 2018.

**FACTUAL BACKGROUND**

Plaintiff Brian Smith enrolled as a LifeVantage Distributor in March 2016, hoping to make an income and support his cancer charity while he was unable to work outside the home.[11] Smith spent over $1,000 to sign up and obtain LifeVantage products to sell. Smith also signed up to purchase more products automatically.[12] Smith attempted to use social media to sell these products, but because other Distributors in his area were already using social media for this very purpose, Smith did not sell any of product he purchased.[13] Smith was also unsuccessful in enrolling any new Distributors.[14]

Plaintiff Michael Ilardo became a LifeVantage Distributor in February 2017, hoping to create an income that would support him as he attempted to establish an evangelical ministry.[15] Ilardo spent approximately $1,800 signing up as a LifeVantage Distributor.[16] But Ilardo found few customers.[17]

Both Plaintiffs allege that they lost money by joining LifeVantage.[18] Plaintiffs' central allegation is that LifeVantage is an illegal pyramid scheme rather than a legitimate multi-level marketing ("MLM") business.[19] Specifically, Plaintiffs bring the following causes of action against the Defendants: (1) Violation of Section 10(b) of the Securities Exchange Act And Rule 10b-5; (2) Violation of 15 U.S.C. § 77l(a)(1) and (2); (3) Violations of Sections 1 and 2 of the

---

[11] Complaint ¶ 12.
[12] *Id.*
[13] *Id.* at ¶ 14.
[14] *Id.*
[15] Complaint ¶ 21-2.
[16] *Id.* at ¶ 27.
[17] *Id.* at ¶ 33.
[18] *Id.* at ¶ 20, 34.
[19] *See e.g.*, Complaint ¶¶ 3, 5, 7, 56, 58.

Sherman Act 15 U.S.C. §1, 2, and Sections 4 of the Clayton Act, 15 U.S.C. § 15; (4) Unjust Enrichment. Defendants request dismissal of all of the causes of action in Plaintiffs' First Amended Class Action Complaint under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.[20]

## STANDARD OF REVIEW

Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim upon which relief may be granted.[21] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[22] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[23] However, "the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."[24] Therefore, to show an entitlement to relief, the facts must "permit the court to infer more than the mere possibility of misconduct."[25]

Under Rule 9(b), a party making allegations of fraud must "state with particularity the circumstances constituting fraud."[26] When the fraud alleged is a species of securities fraud, the complaint must also satisfy the requirements of the Private Securities Litigation Reform Act ("PSLRA"). "The PSLRA requires plaintiffs to state with particularity both the facts constituting

---

[20] Motion to Dismiss at 1.

[21] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[23] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[25] *Id*.

[26] Fed. R. Civ. P. 9(b).

the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to 'deceive, manipulate, or defraud.'"[27]

## DISCUSSION

### I. Plaintiffs Allege Sufficient Facts to State a Securities Exchange Act 10(b) Rule 10b-5 Claim

**A. A Distributorship in LifeVantage qualifies as a security.**

As an initial matter, liability under Rule 10b-5 attaches only "in connection with the purchase or sale of any security."[28] A threshold question is whether a Distributorship in LifeVantage is a security. Defendants do not argue in their motion to dismiss that a LifeVantage Distributorship is not a security. Plaintiffs allege that the combination of the Compensation Plan ("Plan"), the Policies and Procedures, and the Distributor Enrollment Form is "an offering for investment and a security under federal securities laws."[29] Plaintiffs allege that seven out of eight ways for a Distributor to earn money as described in the Plan are "directly tied to recruiting"[30] and forming a downline of Plan participants whose sales supplement the Distributor's income.[31]

In *S.E.C. v. W.J. Howey Co.*, the Supreme Court defined an investment contract under Federal Securities law as "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."[32] Courts, including the Tenth Circuit, have broadly interpreted the *Howey* test so

---

[27] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007).

[28] 17 C.F.R. § 240.10b-5.

[29] Complaint ¶ 82.

[30] *Id.* at ¶ 83.

[31] *Id.* at ¶ 93.

[32] *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

that "the word 'solely' must not be given an unduly restrictive application."[33] Therefore, investment in the Plan, where profit comes "if not solely, at least predominantly from the efforts of others, namely of the downline members,"[34] falls under the definition of an investment contract governed by securities laws.

Moreover, Plaintiffs allege that the LifeVantage MLM structure constitutes a pyramid scheme. "Investment in a pyramid scheme is itself a security.[35] As is discussed below, this allegation is key to Plaintiffs' 10b-5 claim.

### B. Requirements to state a claim under Section 10(b) and Rule 10b-5.

Plaintiffs allege that Defendants have violated Section 10(b) of the Securities Exchange Act and its associated Rule 10b-5.[36] Section 10(b) forbids the use of "any manipulative or deceptive device or contrivance" that would violate any "such rules and regulations as the Commission may prescribe."[37]

Rule 10b-5 operates under the authority granted by Section 10(b), and prohibits the employment of "any device, scheme, or artifice to defraud" as well as "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person" when transacting in securities.[38] To state a 10b-5 claim, Plaintiffs must allege facts showing this type of fraud or deceit, made with scienter.[39] Scienter is "a mental state embracing intent to deceive,

---

[33] *Crowley v. Montgomery Ward & Co., Inc.*, 570 F.2d 877, 879 (10th Cir. 1978) (citing *S.E.C. v. Glenn W. Turner Enter., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973).

[34] *S.E.C. v. Int'l Loan Network, Inc.*, 968 F.2d 1304, 1308 (D.C. Cir. 1992).

[35] *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 450 (E.D.N.Y. 2016)

[36] Complaint ¶¶ 297-308.

[37] 15 U.S.C. § 78j(b).

[38] 17 C.F.R. § 240.10b-5.

[39] *S.E.C. v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1285 (D. Utah 2017).

manipulate, or defraud."[40] The Tenth Circuit acknowledges both fraudulent intent and recklessness as satisfying the scienter requirement.[41]

### C. Plaintiffs sufficiently allege a 10b-5 claim under scheme liability.

Defendants argue that Plaintiffs fail to allege sufficient facts to state a claim under the Securities Exchange Act.[42] Defendants contend that Plaintiffs cannot assert an "inherently fraudulent[43]" pyramid scheme and expect to survive a motion to dismiss, because Plaintiffs "fail[] to identify any specific statements."[44] When a plaintiff alleges fraud by misleading statements or omissions, the fraudulent statements must be set forth specifically.[45] In such circumstances, the Tenth Circuit has required inclusion of "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[46] Specifically, to state a claim for securities fraud under Section 10(b) of the Act, Plaintiffs' complaint must include the following five allegations:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.[47]

Despite its length, Plaintiff's Complaint is insufficient with regard to at least elements (1) and (3). Plaintiffs' voluminous Complaint comes near to puzzle pleading. Puzzle pleading occurs

---

[40] *Id.* (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

[41] *Id.* (citing *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001)).

[42] Motion to Dismiss at 4-9.

[43] Complaint ¶ 60.

[44] *Id.* at 5.

[45] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

[46] *Id.* (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[47] *In re Level 3 Communications, Inc. Securities Litigation*, 667 F.3d 1331, 1333 (10th Cir. 2012).

when a complaint is so voluminous and ineffectively organized as to "place the burden on the reader" to "solve the puzzle" of the plaintiff's claims.[48] Although the Tenth Circuit has expressed disapproval of puzzle pleading,[49] this district and the Tenth Circuit also recognize the "preference for deciding cases on the merits."[50] Therefore, without deciding whether the Complaint is actually a puzzle pleading, it is clear that the Complaint goes on at length without directly setting forth statements made by Defendants. And where such statements are present in the complaint, Plaintiffs do not allege those statements clearly with respect to elements (2), (4), and (5) above.

Plaintiffs' lengthy Amended Complaint contains no reference to specific statements where the identity of the person making the statement, the time and circumstances of the statement, and the consequences of the statement are clearly stated. Moreover, statements praising business products and prospects are employed by many businesses to express an optimistic view of themselves to investors. These statements are not considered fraudulent.[51]

However, a claim under Rule 10b-5 can be pleaded under a theory of "scheme liability." Plaintiffs allege that the business opportunity that they joined was actually an illegal pyramid scheme. An allegation of scheme liability "hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement."[52] Under a scheme liability framework, Plaintiffs must show that Defendants "participated in an illegitimate, sham or inherently

---

[48] *Id.* at *4.

[49] *In re Level 3 Communications, Inc. Securities Litig.*, 667 F.3d 1331, 1339 n.8 (10th Cir. 2012).

[50] *Rumbaugh v. USANA Health Scis., Inc.*, No. 2:17-CV-106, 2018 WL 5044240, at *5 (D. Utah Oct. 17, 2018); *accord Lee v. Max Intern.*, LLC, 638 F.3d 1318, 1321 (10th Cir. 2011) ("[O]ur legal system strongly prefers to decide cases on their merits.").

[51] *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121-22 (10th Cir. 1997).

[52] *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445 (E.D.N.Y. 2016) (quoting SEC v. Kelly. 817 F. Supp. 2d 340, 344 (S.D.N.Y 2011)).

deceptive transaction where [their] conduct or role ha[d] the purpose and effect of creating a false appearance."[53] This district has recognized scheme liability.[54] Therefore, the question on this 12(b)(6) motion is not whether Plaintiffs have identified specific statements, but have plausibly pleaded facts supporting an inherently fraudulent scheme.

Plaintiffs have alleged enough plausible facts in their Complaint to state a claim for scheme liability under Rule 10b-5. Plaintiffs allege that Defendants structured their purported MLM as a pyramid scheme. As part of the scheme, recruited Distributors paid for the right to receive compensation that was dependent on the recruitment of additional participants in the scheme rather than on legitimate retail sales. Plaintiffs also allege that Defendants hired professional marketers to pose as "success stories" to convince potential recruits that they could attain great financial rewards that were, in reality, highly unlikely.

Plaintiffs also allege that Defendants made improper health claims for an unregulated supplement and misrepresented the scope of their patents.[55] Plaintiffs' Complaint references the *Koscot* test[56] and alleges that Defendants' MLM was a pyramid scheme. Plaintiffs' factual allegations, taken as as true, state a claim that is facially plausible.

---

[53] *Id*.

[54] *SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1285 (D. Utah 2017) (evaluating a 10b-5 claim against the alleged perpetrator of a Ponzi scheme without reference to specific statements but rather in light of the prohibition against "any device, scheme, or artifice to defraud").

[55] Complaint ¶¶ 335, 340.

[56] *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975) (describing pyramid schemes as involving "payments by participants of money to the company in return for which they receive (1) the right to sell a product *and* (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users") (emphasis in original); see also *Whole Living, Inc. v. Tolman*, 344 F. Supp. 2d 739, 743 (D. Utah 2004) (applying *Koscot* test); *Webster v. Omnitrition Intern., Inc.*, 79 F.3d 776, 781-87 (9th Cir. 1996) (applying *Koscot* test).

### D. Plaintiffs sufficiently allege scienter.

Defendants argue that Plaintiffs' 10b-5 claim fails because it does not adequately allege scienter.[57] The U.S. Supreme Court has determined that "[u]nder the PLSRA, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"[58] Noting that Congress has "raise[d] the bar for pleading scienter,"[59] the Supreme Court also requires that a complaint show an "inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged" to pass muster under the PSLRA.[60] In making such determination, a court must "consider the complaint in its entirety" and "take into account plausible opposing inferences."[61]

Defendants argue that Plaintiffs' cannot rely on allegations that Defendants benefitted from the alleged scheme.[62] But "evidence of motive and opportunity . . . may be considered as part of the mix of information that can come together to create the 'strong inference' of scienter required by the PSLRA."[63] Plaintiffs may not rely on such motives exclusively, but "the court's job is not to scrutinize each allegation in isolation, but to assess all the allegations holistically."[64]

Moreover, Defendants' heavy reliance on *City of Philadelphia v. Fleming Companies, Inc.* is unconvincing. The allegations of fraud at issue in *Fleming* hinged upon the omission of

---

[57] Motion to Dismiss at 7.

[58] *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (quoting 15 U.S.C.A. § 78u-4(b)(2)(A) (Fed. 2011 Supp.)).

[59] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[60] *Id.* at 324.

[61] *Id.* at 322-23.

[62] Motion to Dismiss at 8.

[63] *Id.*

[64] *Tellabs* at 326

one set of allegedly material facts,[65] which is fundamentally distinct from the encompassing allegations in this case of a fraudulent scheme carried out by Defendants.

Defendants further argue Plaintiffs fail to sufficiently allege that Defendants knew of "any unlawful scheme."[66] On this point, Defendants rely on *Sanchez v. Crocs,* an unpublished case, in asserting that scienter cannot be pleaded from "knowledge of falsity based on access to mere raw data" but that the data must all be "collected in identifiable reports demonstrating the falsity."[67]

However, Plaintiffs allege substantially more than "mere" access to data. Plaintiffs allege that Defendants knew that they were perpetrating a pyramid scheme or something so dangerously close that it risked being found to be a pyramid scheme.[68] This allegation that Defendants executed an illegitimate business is qualitatively different from the allegation in *Sanchez* that a fully legitimate business operation failed to monitor and report to its investors important information involving the value of its inventory.[69] The ruling in *Sanchez* speaks to the fact that not every company that makes a mistake is aware of the problem at the time, and "unseen warning signs" or conceivable negligence do not establish scienter.[70]

Therefore, Defendants cannot rely on *Sanchez*. Plaintiffs allege that Defendants operate a pyramid scheme. In support of that allegation, Plaintiffs further allege, for example, that seven of the eight ways Distributors may earn commissions "are based, directly or indirectly" on

---

[65] *Fleming*, 264 F.2d at 1254.

[66] Motion to Dismiss at 8.

[67] Motion to Dismiss at 8.

[68] Complaint ¶ 306.

[69] *Sanchez v. Crox, Inc.*, 667 Fed.Appx. 710, 714-15 (10th Cir. 2016).

[70] *Id.* at 721.

recruiting."[71] Defendants designed this method of compensation, so it is not an "unseen warning sign" of which Defendants may be negligently unaware. The financial data Plaintiffs gathered is relevant when viewed holistically with this and Plaintiffs' other allegations.

Finally, Defendants argue that the following allegations are unavailing without "establish[ing] the falsity of any statement": that Defendants knew about FTC regulations, that Defendants knew of lawsuits filed against two other MLM companies, and that Defendants knew of reports filed with the SEC and the Distributor spending data.[72] But again, Defendants rely on a requirement for allegations of specific false statements, when the scheme liability that Plaintiffs allege instead requires "performance of an inherently deceptive act that is distinct from an alleged misstatement."[73] Plaintiffs allege the inherently deceptive act of presenting a pyramid scheme as a legitimate business opportunity, and the allegations that Defendants seek to discredit tend to support the inference that Defendants knew they were engaged in such a scheme, and thus should be considered.

Accepting the facts alleged by Plaintiffs as true and taking Plaintiffs' allegations as a whole, as instructed by the United States Supreme Court[74] and the Tenth Circuit,[75] Plaintiffs allegations of scienter, while not necessarily greater than any other inference, are "at least as compelling as any opposing inference."[76]

---

[71] Complaint ¶ 93.

[72] Motion to Dismiss at 9.

[73] *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445 (E.D.N.Y. 2016) (quoting *SEC v. Kelly,* 817 F. Supp. 2d 340, 344 (S.D.N.Y 2011)).

[74] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

[75] *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.2d 1245, 1263 (10th Cir. 2001).

[76] *Tellabs*, 551 U.S. at 324.

Plaintiffs allege that Defendants, with a motive to turn a profit on a business that had been previously unsuccessful, operated a pyramid scheme, and that they knew or should have known that their business structure did, in fact, constitute a pyramid scheme, and that other MLM businesses with the same structure had previously been found to be pyramid schemes. Furthermore, the specific alleged fact that Defendants hired professionals to pose as successful Distributors leads to a strong inference that Defendants were aware that their business model would not be attractive to investors on its own merits. Defendants failed to address this allegation in their motion to dismiss.

At the motion to dismiss stage, it is enough that, seen in the light most favorable to the non-moving party, the allegation that Defendants acted with scienter is at least as plausible as the competing inferences. Therefore, granting Defendants' motion to dismiss with respect to count one of Plaintiffs' Amended Complaint would be inappropriate. Of course, "[w]hether respondents can ultimately prove their allegations and establish scienter is an altogether different question."[77] At this stage there is no indication of what a final decision on the merits would be.

## II. Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Sale of Unlicensed Securities

Plaintiffs allege that Defendants violated 15 U.S.C. § 771(a)(1) and (2), also known as Sections 12(1) and (2). Section 12(2) states that anyone who sells a security "by means of a prospectus or oral communication" which is fraudulent "shall be liable."[78] Defendants argue that Plaintiffs have failed to allege that LifeVantage distributorships are public offerings subject to the Securities Act, and thus required to be registered.[79]

---

[77] *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011).

[78] 15 U.S.C. § 771(a)(2).

[79] Motion to Dismiss at 10.

To support their allegation, Plaintiffs offer the legal conclusion that the Compensation Plan given by LifeVantage to its recruited Distributors is "a prospectus within the meaning of Section 12(2)."[80] But no other facts are alleged to support this conclusory assertion.[81] "[A]ssertions devoid of factual allegations" that are nothing more than "conclusory" are disregarded.[82] Therefore, Plaintiffs have failed to allege sufficient facts to state a claim under 15 U.S.C. § 77l.

### III. Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Antitrust Violations

Defendants argue that Plaintiffs do not establish the elements of a *Walker Process* claim for antitrust violation.[83] In *Walker Process*, the Supreme Court held that enforcing a patent obtained by fraud on the Patent Office may constitute an antitrust violation if the other elements of a Sherman Act Section 2 case are also established.[84] Defendants argue that Plaintiffs fail to allege fraud on the United States Patent Office and fail to plead the elements of a Sherman Act monopolization claim.[85] Defendants are correct.

#### A. Plaintiffs fail to sufficiently allege that Defendants committed a fraud on the USPTO

Plaintiffs allege that Defendants committed fraud on the USPTO in three ways: (1) that LifeVantage incorrectly attributed the inventorship of at least some of its patents; (2) LifeVantage withheld prior art, and (3) LifeVantage incorrectly stated the scope of its patents to the public in its advertising and other public statements. The third allegation has no bearing on a *Walker Process* antitrust claim. The elements of a Walker Process claim include fraud on the

---

[80] Complaint ¶ 314.

[81] Indeed, the word "prospectus" does not appear anywhere else in the lengthy Amended Complaint.

[82] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[83] Motion to Dismiss at 11.

[84] *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965).

[85] Motion to Dismiss at 11.

USPTO—not puffery, false advertising, or miscommunication of patent contents or inventorship to the consuming public.

But the first and second allegations constitute fraud on the USPTO only if Plaintiffs allege "specific intent to deceive the PTO."[86] This requirement is higher than the permissive standard of Rule 9(b) that fraudulent intent "may be alleged generally."[87] Responding to a flood of litigation rooted in fraud on the USPTO, the Federal Circuit noted that "[w]hile honesty at the PTO is essential, low standards for intent and materiality have inadvertently led to many unintended consequences. . . ."[88] These intended consequences included overinclusion of prior art to the point of burdening the USPTO.[89] The Federal Circuit consequently imposed the specific intent requirement, and further instructed district courts not to infer intent from materiality.[90] Therefore, without supporting facts, Plaintiffs' conclusory assertion that Defendants' actions were "deliberate and made with fraudulent intent"[91] is insufficient. Plaintiffs have not alleged any facts to support the requisite intent. Instead they offer speculation and the inference of motivation on the part of Defendants.

Moreover, in alleging incorrect attribution of inventorship, Plaintiffs have misrepresented the effect of an error in naming the inventor. 35 U.S.C. § 256 specifically provides that "[t]he error of omitting inventors or naming persons who are not inventors shall not invalidate the patent . . . if it can be corrected . . . .."[92] Thus Plaintiffs' allegations that Defendants petitioned to

---

[86] *Therasense Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

[87] Fed. R. Civ. P. 9(b).

[88] *Therasense*, 649 F.3d at 1290.

[89] *Id*. at 1289-90.

[90] *Id.*

[91] Complaint at 93.

[92] 35 U.S.C. § 256(b).

correct the inventor of the relevant patent do not necessarily tend to show fraud or fraudulent intent, but show an accepted interaction with the Patent Office. This misunderstanding of the law impacts the plausibility of Plaintiffs' pleading.

### B. Plaintiffs have failed to allege sufficient facts that satisfy the remaining elements of a *Walker Process* Claim

Deficiencies in Plaintiffs' allegation of fraud on the Patent Office aside, Plaintiffs still fail to state a claim for antitrust violations. A *Walker Process* claim requires not only fraudulent procurement of a patent, but also the presence of "the other elements necessary" for a Sherman Act section 2 claim.[93]

The elements of an offense under the Sherman Act are "(1) that a firm has monopoly power in a properly defined relevant market; and (2) that it willfully acquired or maintained this power by means of anticompetitive conduct."[94] Plaintiffs have failed to plausibly define the relevant market. "The relevant market is defined as 'the area of effective competition.'"[95] Plaintiffs allege that LifeVantage's Protandim product constitutes a market all by itself.[96] But Plaintiffs undercut their own argument by pointing out that other products could be substituted for Protandim, since its ingredients are readily available.[97] Substitutes for a product should be included in the relevant market for that product.[98] "If the market described in the complaint fails to include 'reasonably good substitutes' then the plaintiff has not alleged a relevant market."[99]

---

[93] *Walker Process Equipment, Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 174 (1965).

[94] *U.S. v. AMR Corp.*, 335 F.3d 1109, 1113 (10th Cir. 2003); *see also*, *U.S. v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

[95] *Ohio v. Am. Express Co.,* 138 S.Ct. 2274, 2285 (2018).

[96] Complaint ¶ 324.

[97] Complaint ¶ 326-7.

[98] *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008).

[99] *Id*.

16

Furthermore, Plaintiffs allege that as LifeVantage Distributors they could not sell Protandim because it was priced too high to effectively compete with cheaper alternatives.[100] This reveals both the existence of substitutes and Defendants' lack of power in the market. The typical form of monopoly power is the ability to raise prices.[101] Therefore, Plaintiffs have stated themselves that Defendants lack monopoly power.

Plaintiffs' attempt to limit the market to Protandim is prudent because if Protandim were the relevant market and if Defendants' patents were invalid, there might be a plausible showing of an antitrust violation. A valid patent, of course, is an exception to antitrust scrutiny and censure.[102] However, because Plaintiffs have not defined the market properly, they do not state a claim under the Sherman Act even if successful in their attempt to show invalidity of Defendants' patents through fraud. Therefore, Plaintiffs have not alleged sufficient facts to support an antitrust claim.

### IV. Plaintiffs Fail to Allege Sufficient Facts to State a Claim for Unjust Enrichment

Plaintiffs' final cause of action in their Amended Complaint alleges unjust enrichment. Plaintiffs simply allege that Defendants derived financial benefits from Plaintiffs and the putative class members. Instead of alleging the elements of an unjust enrichment claim, Plaintiffs offer in a conclusory manner that "it would be unjust to permit these Defendants to retain these ill-gotten gains."[103] In alleging unjust enrichment Plaintiffs do not even incorporate their prior allegations. Because Plaintiffs have not alleged enough facts to show that a claim of unjust enrichment is plausible on its face, Plaintiffs have failed to state a claim for unjust enrichment.

---

[100] Complaint ¶ 95.

[101] *Campfield*, 532 F.3d at 1118.

[102] *U.S. v. Line Material Co.*, 333 U.S. 287, 309 (1948) ("The Sherman Act was enacted to prevent restraints of commerce but has been interpreted as recognizing that patent grants were an exception.")

[103] Complaint ¶ 346.

**ORDER**

IT IS HEREBY ORDERED that the Motion[104] is DENIED in part as to the Securities Act Rule 10b-5 claim and GRANTED in part as to the Sections 12(1) and (2) claim, the antitrust claim, and the unjust enrichment claim. These claims are dismissed but Plaintiffs are granted leave to amend by a filing within 14 days.

IT IS FURTHER ORDERED that the parties shall file their Joint Attorney Planning Meeting Report and e-mail a stipulated Proposed Scheduling Order in word processing format to Magistrate Judge Warner on or before January 10, 2020.

Signed December 5, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[104] Defendants' Motion to Dismiss Plaintiffs' Complaint, [docket no. 94](docket no. 94), filed Nov. 5, 2018.