IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BRIAN SMITH, individually, and MICHAEL ILARDO, individually, and on behalf of a class of similarly situated individuals,<br><br>               Plaintiff,<br><br>v.<br><br>LIFEVANTAGE CORPORATION, a corporation, and DARREN JENSEN, an individual,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [114] DEFENDANTS' PARTIAL MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Case No. 2:18-cv-00621-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendants' Partial Motion to Dismiss the Second Amended Class Action Complaint[1] (Motion to Dismiss). Defendants ask the court to dismiss with prejudice the second and third counts of Plaintiffs' Second Amended Class Action Complaint[2] (Second Amended Complaint) pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Having reviewed the parties' briefing, the court concludes the motion may be resolved without oral argument.[4] For the following reasons the Motion to Dismiss is GRANTED in part and DENIED in part.

---

[1] Defendants' Partial Motion to Dismiss the Second Amended Class Action Complaint (Motion to Dismiss), ECF No. 114, filed January 28, 2020.

[2] Plaintiffs' Second Amended Class Action Complaint (Second Amended Complaint), ECF No. 108, filed December 19, 2019.

[3] Motion to Dismiss at 10.

[4] *See* DUCivR 7-1(f).

# BACKGROUND

Defendant LifeVantage is a Delaware corporation, headquartered in Sandy, Utah.[5] Defendant Darren Jensen has been the CEO of LifeVantage since 2015.[6] In 2004 LifeVantage acquired the rights to its primary product, Protandim,[7] which is a supplement purported to provide numerous health benefits.[8] From 2004 until 2009 LifeVantage sold Protandim "through traditional retail channels" without much success.[9]

In late 2008 or early 2009, LifeVantage transitioned from traditional retail sales into multilevel marketing,[10] selling a distributorship opportunity to buy and resell its products, such as Protandim.[11] As part of its multilevel marketing approach, LifeVantage "coordinate[d] recruiting events and attract[ed] new, unsophisticated Distributors."[12] LifeVantage held conventions that "thousands of Distributors and potential Distributors" attended.[13] "Distributors and potential Distributors were encouraged to participate in open Facebook groups,"[14] and Jensen "ha[d] a noticeable social media presence where he pushed the 'business opportunity' directly to the public."[15] LifeVantage also presented information about its distributorships on its

---

[5] Second Amended Complaint at ¶ 37.

[6] *Id.* at ¶¶ 39, 81.

[7] *Id.* at ¶ 43.

[8] *Id.* at ¶¶ 2, 5, 37, 38.

[9] *Id.* at ¶¶ 55, 57.

[10] *Id.* at ¶ 59.

[11] Second Amended Complaint at ¶ 2.

[12] *Id.* at ¶ 86.

[13] *Id.* at ¶ 150.

[14] *Id.* at ¶ 154.

[15] *Id.* at ¶ 197.

website, where site visitors could find the LifeVantage Compensation Plan (Plan).[16] As a result of these efforts, LifeVantage gained "hundreds of thousands" of customers who paid for the "business opportunity," or, "the right to participate in LifeVantage's new business model."[17]

Once enrolled, these customers are classified as LifeVantage Distributors and are subject to the terms of the Distributor Agreement, Policies and Procedures, Plan, and Plan Highlights.[18] The Distributor Agreement, Policies and Procedures, and Plan are referred to here as the Distributor Documents. It is alleged that through these Distributor Documents LifeVantage offers and sells distributorships to the public, making offerings to over 2,000 Distributor investors each year.[19]

Plaintiff Brian Smith enrolled as a distributor with LifeVantage in March 2016[20] after he was approached by a LifeVantage Distributor.[21] Prior to enrolling, Smith attended two LifeVantage meetings hosted by Distributors[22] and "carefully considered the statements and videos about both the product claims and the 'business opportunity.'"[23] He then enrolled by providing his credit card information to a LifeVantage Distributor.[24] Smith purchased the Start Kit, Platinum Pack, and signed up to receive an automatic shipment of the LifeVantage product

---

[16] *See id.* at ¶ 144.

[17] Second Amended Complaint at ¶ 62.

[18] *Id.* at ¶ 15.

[19] *Id.* at ¶¶ 276, 278.

[20] *Id.* at ¶ 13.

[21] *Id.* at ¶ 11.

[22] Second Amended Complaint at ¶ 11.

[23] *Id.* at ¶ 13.

[24] *Id.* at ¶ 14.

"Protandim Nrf2."[25] He attempted to sell LifeVantage products through social media but was ultimately unsuccessful.[26] After eight months Smith cancelled his automatic shipment.[27] He lost over $1,000 as a result of being a LifeVantage Distributor.[28]

Plaintiff Michael Ilardo became a distributor in February 2017 and remained a distributor until July 2018.[29] Ilardo enrolled as a distributor after discussing the opportunity with the husband of a LifeVantage Distributor and reviewing materials on the LifeVantage website.[30] The husband of the LifeVantage Distributor signed up Ilardo while Ilardo was on the telephone with him.[31] Ilardo purchased the platinum distributor starter kit and signed up for the automatic shipment program.[32] He also purchased training DVDs and business cards, as well as attended other trainings and conventions.[33] As a result of being a LifeVantage Distributor, Ilardo lost at least $8,000, though he received back approximately $1,000 in commissions.[34]

Plaintiffs assert class action claims on behalf of a class of at least 200,000 Distributors in the United States and elsewhere.[35] Each potential class member has signed a Distribution Agreement, paid money as a Distributor, and lost money as a Distributor.[36]

---

[25] *Id.*

[26] *Id.* at ¶ 16.

[27] *Id.* at ¶ 17.

[28] Second Amended Complaint at ¶¶ 22, 259.

[29] *Id.* at ¶ 23.

[30] *Id.* at ¶¶ 27–28.

[31] *Id.* at ¶ 27.

[32] *Id.* at ¶ 29.

[33] *Id.* at ¶¶ 29, 32.

[34] Second Amended Complaint at ¶¶ 36, 259.

[35] *Id.* at ¶ 243.

[36] *Id.* at ¶ 244.

Smith first sued Defendants in January of 2018 in the District of Connecticut.[37] The case was then transferred to the District of Utah.[38] On September 20, 2018, Plaintiffs filed an Amended Complaint adding Ilardo as a plaintiff.[39] Defendants then moved to dismiss the Amended Complaint.[40] The court granted Defendants' request in part, and denied it in part,[41] giving Plaintiffs leave to amend.[42] As a result, Plaintiffs filed the Second Amended Complaint. In the Second Amended Complaint Plaintiffs assert three causes of action: (1) violation of Section 10(b) of the Securities Exchange Act and rule 10b-5, 17 C.F.R. § 240.10b-5; (2) violation of 15 U.S.C. § 77l(a)(1) and (2); and (3) unjust enrichment. Defendants move to dismiss the second and third causes of action.[43]

## LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[44] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[45] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to

---

[37] *See* Complaint, ECF No. 1, filed January 24, 2018.

[38] ECF No. 58, filed August 6, 2018.

[39] Amended Complaint, ECF No. 75, filed September 20, 2018.

[40] Defendants' Motion to Dismiss the First Amended Class Action Complaint, ECF No. 94, filed November 5, 2018.

[41] Memorandum Decision and Order Granting in Part and Denying in Part [94] Motion to Dismiss, ECF. No. 106, filed December 5, 2019.

[42] *See id.*

[43] Motion to Dismiss at 2.

[44] Fed. R. Civ. P. 12(b)(6); *see Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[45] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

the plaintiff.[46] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law are disregarded.[47]

## DISCUSSION

Defendants move to dismiss counts two and three of Plaintiffs' Second Amended Complaint. Count two alleges violations of the Securities Exchange Act of 1933 (Securities Act), specifically violation of 15 U.S.C. § 77l(a)(1) and (2).[48] Count three alleges unjust enrichment.[49]

### I.    Plaintiffs' Claim Under 15 U.S.C. § 77l(a)(1) is Time-Barred

Plaintiffs assert that Defendants violated 15 U.S.C. § 77l(a)(1),[50] which is referred to as Section 12(1) of the Securities Act. Liability may arise under Section 12(1) when an issuer sells or offers to sell an unregistered security to the public through a prospectus or otherwise.[51] Section 12(1) is subject to a statute of repose found in 15 U.S.C. § 77m, which is referred to as Section 13. The statute of repose provides in relevant part, "In no event shall any such action be brought to enforce a liability created under [Section 12(1)] more than three years after the security was bona fide offered to the public."[52]

The parties disagree over the meaning of the phrase "bona fide offered to the public." Defendants contend that a security is "bona fide offered to the public" when it is first offered to

---

[46] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[48] Second Amended Complaint at ¶¶ 275–89.

[49] *Id.* at ¶¶ 345–49.

[50] *Id.* at ¶¶ 276–83.

[51] 15 U.S.C. § 77l(a)(1); *see also id.* § 77e.

[52] *Id.* § 77m.

the public.[53] This interpretation presents a statute-of-repose issue because the securities at issue

here were first offered to the public in late 2008 or early 2009.[54] For their part, Plaintiffs contend

that a security is "bona fide offered to the public" when the security was last offered to the

public.[55] Under Plaintiffs' interpretation, there is no issue with the statute of repose because the

securities at issue continue to be offered to the public.[56]

The court determines that the "first offered" interpretation applies. This interpretation is

in line with the "vast majority of courts"[57] and with the purpose of statutes of repose.[58] A statute

of repose "acts to define temporally the right to initiate suit against a defendant after a

legislatively determined time period" and "is not a limitation of a plaintiff's remedy, but rather

defines the right involved in terms of the time allowed to bring suit."[59] A statute of repose

provides "an easily ascertainable and certain date for the quieting of litigation."[60] Indeed, "a

repose period can run to completion even before injury has occurred to a potential plaintiff,

extinguishing a cause of action before it even accrues,"[61] which is the circumstance in this

matter.

---

[53] Defendants' Reply in Support of Partial Motion to Dismiss the Second Amended Class Action Complaint (Reply) at 5–6, ECF No. 124, filed March 17, 2020.

[54] *See* Motion to Dismiss at 6–7; Reply at 5; *see also* Second Amended Complaint at ¶ 59.

[55] Plaintiffs' Response in Opposition to Defendants' Partial Motion to Dismiss the Second Amended Class Action Complaint (Opposition), at 8–10, ECF No. 122, filed March 3, 2020.

[56] *See id.* at 8–9.

[57] *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 100 (2d Cir. 2004) (collecting cases).

[58] *Id.* at 102.

[59] *Id.*

[60] *Id.* at 104.

[61] *Id.* at 102.

In *P. Stolz Family Partnership L.P. v. Daum*, the Second Circuit engaged in a rigorous analysis of the two interpretations of "bona fide offered to the public," determining that the "first offered" interpretation was the better of the two in an opinion the Fourth Circuit later acknowledged as "the leading authority on the term 'bona fide offered to the public' in § 13."[62] In *P. Stolz*, the Second Circuit reasoned that the "first offered" approach results in "treating the same language in the same statutory section consistently" and in unregistered securities being treated the same way as registered securities, which avoids the outcome of a purchaser of unregistered securities being given "greater protection from the repose period than a purchaser of registered securities."[63] The statute of repose for registered securities that have a registration statement with false or misleading facts is triggered when the security is "bona fide offered to the public," which means the effective date of the registration statement.[64] The "first offered" approach uses similar timing for unregistered securities—the date that the security was first genuinely offered to the public—with the result that both registered and unregistered securities are subject to the same time frame for quieting litigation.

Applying the first offered approach to the facts here, Plaintiffs' Section 12(1) claim is time-barred. Plaintiffs allege that starting in late 2008 or 2009 LifeVantage shifted to the multilevel marketing model,[65] which is the platform through which it offered the

---

[62] *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 896 (4th Cir. 2014).

[63] *P. Stolz*, 355 F.3d at 104–05.

[64] *Id.*

[65] Second Amended Complaint at ¶ 59.

distributorships.[66] Plaintiffs first filed their complaint on January 24, 2018,[67] approximately eleven years after the distributorships were first offered to the public. Eleven years exceeds the three-year statute of repose and Plaintiffs' Section 12(1) claim is thus time-barred. Defendants' motion to dismiss is granted with respect to Plaintiffs' Section 12(1) claim.

## II.   Plaintiffs Sufficiently Pled a Claim Under 15 U.S.C. § 77l(a)(2)

Plaintiffs allege Defendants violated 15 U.S.C. § 77l(a)(2),[68] which is referred to as Section 12(2) of the Securities Act. Liability arises under Section 12(2), when an issuer sells or offers to sell a security that misstates or omits a material fact by means of a prospectus or oral communication.[69] The United States Supreme Court determined that Section 12(2) liability is limited to public offerings.[70] To maintain a Section 12(2) claim Plaintiffs must allege a public offering through a prospectus.

Defendants argue that Plaintiffs failed to plead facts demonstrating that the Distributor Documents are indeed a prospectus.[71] They also contend that Plaintiffs have not plausibly alleged a public offering.[72] Plaintiffs respond that the Distributor Documents meet the definition of prospectus, and that they have plausibly alleged a public offering based on the number of

---

[66] *See id.* at ¶ 38.

[67] *See generally* Complaint.

[68] Second Amended Complaint at ¶¶ 284–89.

[69] 15 U.S.C. § 77l(a)(2).

[70] *Gustafson v. Alloyd Co.*, 513 U.S. 561, 577–78 (1995).

[71] Motion to Dismiss at 5–6.

[72] *Id.*

offerees, the offerees' sophistication level, the public manner in which LifeVantage solicited offerees, and the relationship between LifeVantage and the offerees.[73]

A "prospectus" "refers to a document soliciting the public to acquire securities."[74] Plaintiffs' Second Amended Complaint contains factual allegations that plausibly identify a prospectus. The Distributor Documents are comprised of the Distributor Agreement, Policies and Procedures, and the Plan.[75] The Distributor Documents were used to offer the distributorships to the public, including Plaintiffs and the proposed class.[76] Thus Plaintiffs have sufficiently alleged the existence of a prospectus for pleading purposes.

To determine whether an offering is public, the Tenth Circuit instructs courts to "focus on such factors as: (1) the number of offerees; (2) the sophistication of the offerees, including their access to the type of information that would be contained in a registration statement; and (3) the manner of the offering."[77]

Here, Plaintiffs sufficiently allege the public nature of the offerings for pleading purposes. To the first factor, Plaintiffs allege that "offerings were publicly made to over 2,000 Distributor investors each year"[78] and that LifeVantage "sold tens of thousands of distribution

---

[73] Opposition at 2–7.

[74] *Gustafson*, 513 U.S. at 574.

[75] Second Amended Complaint at ¶ 15.

[76] *See id.* at ¶¶ 15 ("The Distributor Agreement, Policies and Procedures ('P&P'), Plan, and Plan Highlights . . . were standard documents that LifeVantage used to classify buyers as Distributors and impose terms on their distribution business.), 128 (alleging that the Distributor Documents were "disclosed to potential Distributors"), 253 (alleging that the Distributor Documents comprised the "distribution interest purchased by the Named Plaintiffs and the Class"), 278 (alleging the Distributor Documents as the distribution interest purchased by Named Plaintiffs and the Class), 285 (alleging that the Named Plaintiffs and the Class received the Distributor Documents).

[77] *U.S. v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993).

[78] Second Amended Complaint at ¶ 276.

interests each year at issue."[79] To the second factor, Plaintiffs allege that LifeVantage sold to "duped and unsophisticated investor-Distributors,"[80] that LifeVantage worked to attract "unsophisticated Distributors,"[81] and that the scheme targeted "unsophisticated investors."[82] To the third and final factor, Plaintiffs allege that Distributors made offerings at conferences and presentations attended by other Distributors and potential Distributors,[83] by posting information about distributorships on the internet,[84] and by selling or offering to sell distributorships "through interstate commerce or the mails."[85] In sum, the Second Amended Complaint alleges sufficient facts that there was a public offering through a prospectus.

Because Plaintiffs have alleged a public offering through a prospectus, their Section 12(2) claim survives the motion to dismiss. Defendants' motion to dismiss is denied with respect to Plaintiffs' Section 12(2) claim.

### III.  Plaintiffs Failed to State a Claim for Unjust Enrichment

A plaintiff may recover for unjust enrichment when a defendant has (1) received a benefit, (2) appreciated or had knowledge of this benefit, and (3) retained the benefit under circumstances that would make it unjust to do so.[86] An unjust enrichment claims seeks an

---

[79] *Id.* at ¶ 280.

[80] *Id.* at ¶ 4.

[81] *Id.* at ¶ 88.

[82] *Id.* at ¶ 255(a).

[83] *Id.* at ¶¶ 11, 30, 33, 86, 150.

[84] Second Amended Complaint at ¶¶ 28, 75, 143, 144, 230, 257.

[85] *Id.* at ¶ 278.

[86] *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 45, 355 P.3d 1000.

equitable remedy.[87] "[W]hen seeking an equitable remedy, a plaintiff must affirmatively show a lack of an adequate remedy at law on the face of the pleading."[88]

In *Arson v. My Investing Place, LLC*,[89] the court dismissed the plaintiffs' unjust enrichment claim, in part, because the plaintiffs failed to affirmatively plead the lack of an adequate remedy at law.[90] Similarly, in *Thorpe v. Washington City*, the Utah Court of Appeals affirmed the district court's "refusal to fashion an adequate remedy" for the plaintiff because the plaintiff's complaint "wholly fail[ed] to allege the lack of an adequate legal remedy."[91] As in those two cases, here, Plaintiffs' claim for unjust enrichment fails because Plaintiffs did not allege the lack of an adequate remedy at law in their Second Amended Complaint.[92]

Moreover, where there is "an enforceable contract governing the rights and obligations of the parties" a plaintiff cannot maintain a claim for unjust enrichment.[93] Plaintiffs do not deny the existence of a contract with LifeVantage or dispute that the contract is enforceable.[94]

With respect to Jensen, Plaintiffs allege that he is the Chief Executive Officer and "public face" of LifeVantage and thus involved in promoting LifeVantage through social media and

---

[87] *Thorpe v. Washington City*, 2010 UT App 297, ¶ 27, 243 P.3d 500.

[88] *Id.* at ¶ 28 (citation and internal quotation marks omitted); *see also Arson v. My Investing Place, LLC*, No: 2:12-cv-865, 2013 WL 5724048, at *6 (D. Utah Oct. 21, 2013).

[89] 2013 WL 5724048.

[90] *Id.* at *6.

[91] *Thorpe*, 2010 UT App 297, ¶ 29.

[92] Plaintiffs also argue that they pled unjust enrichment in the alternative. However, the court could find nowhere in the Second Amended Complaint anything indicating this pleading was in the alternative.

[93] *Shurtliff v. Wells Fargo Bank*, No. 1:10-cv-165, 2010 WL 4609307, at *4 (D. Utah Nov. 5., 2010).

[94] *See* Opposition at 13; *see also* Second Amended Complaint at ¶¶ 12–13, 25–28.

conventions.[95] They also allege that Jensen knew that Distributors were "doomed to lose money" and that Distributors often ceased being Distributors not long after enrollment.[96] Plaintiffs further contend that a "reasonable inference in favor of Plaintiffs and the Class is that Jensen is paid from the money LifeVantage generates from its Distributors."[97] These statements do not plausibly state a claim for unjust enrichment. Plaintiffs allege that they purchased products and a distributorship from LifeVantage, not Jensen. Simply alleging that Jensen is paid by LifeVantage—an allegation which would be true for every corporate officer, director, and, indeed, every employee of the company—is not enough. Moreover, Plaintiffs failed to supply any binding case law suggesting that they could sustain this claim under similar facts. Thus the unjust enrichment claim is dismissed as to Defendant Jensen.

Because Plaintiffs have not alleged the lack of an adequate remedy at law and a contract exists between Plaintiffs and Defendant LifeVantage, Plaintiffs fail to state a claim for unjust enrichment. And because Plaintiffs do not allege that they conferred a benefit on Defendant Jensen, the claim against him fails as well. Defendants' motion to dismiss is granted with respect to Plaintiffs' unjust enrichment claim.

## ORDER

For the reasons stated in this Memorandum Decision and Order, Defendants' Partial Motion to Dismiss the Second Amended Class Action Complaint is GRANTED in part and

---

[95] Second Amended Complaint at ¶¶ 39, 86, 150, 154, 193, 197.

[96] *Id.* at ¶¶ 166, 167, 169.

[97] Opposition at 14.

DENIED in part. Plaintiffs' claim under 15 U.S.C. § 77l(a)(1) is dismissed with prejudice.

Plaintiffs' unjust enrichment claim is dismissed without prejudice.

Signed November 25, 2020.

BY THE COURT

_____

David Barlow
United States District Judge

14