# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| BRIAN SMITH and MICHAEL ILARDO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFEVANTAGE CORPORATION, a Delaware corporation; and DARREN JENSEN, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:18-cv-00621-DBB-JCB<br><br><br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Defendant LifeVantage Corporation ("LifeVantage") moved for leave to amend its Answer to assert a counterclaim for breach of contract ("Motion").[1] For the reasons explained below, the court grants the Motion.

## BACKGROUND

LifeVantage is a company that sells nutritional products. Plaintiffs Brian Smith ("Mr. Smith") and Michael Ilardo ("Mr. Ilardo") (collectively, "Plaintiffs") alleged that after enrolling as distributors of LifeVantage products, they purchased products to sell. Plaintiffs claim that they found it difficult to sell the product and could only make money, if at all, recruiting others to be distributors for LifeVantage. In fact, Plaintiffs aver that they lost money—Mr. Smith more than $1,000 and Mr. Ilardo more than $7,000 as LifeVantage distributors.

---

[1] ECF No. 157.

In January 2018, Plaintiffs filed suit against LifeVantage for violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5, 17 C.F.R. § 240.10b-5.[2] Plaintiffs allege that LifeVantage's multi-level marketing business operates as a fraudulent pyramid scheme resulting in financial losses for them and a class of 200,000 distributors.

LifeVantage denied the allegations in its Answer and now seeks to amend to assert a counterclaim against Mr. Ilardo for breach of the Distributor Agreement. Specifically, LifeVantage contends that Mr. Ilardo breached the Distributor Agreement by: (1) improperly recruiting LifeVantage Distributors to another network marketing venture; (2) failing to keep records of sales that he completed with LifeVantage customers; and (3) misrepresenting the curative effects of LifeVantage products.[3] LifeVantage contends it was not aware of the facts related to the breach until Mr. Ilardo's April 16, 2021 deposition. Two weeks later, on April 30, 2021—four months after the December 23, 2020 deadline to amend pleadings[4]—Life Vantage sought leave to amend. Plaintiffs oppose the motion, arguing it is "untimely, futile, and advanced for an improper purpose."[5]

## LEGAL STANDARD

Once a scheduling order's deadline for amending the pleadings has passed, a movant must demonstrate that "good cause" exists to modify the scheduling order under Fed. R. Civ. P.

---

[2] ECF No. 108 at 93-103 of 111. Plaintiffs' other causes of action have been dismissed. ECF No. 150.

[3] ECF No. 157-1 at 71 of 118.

[4] ECF No. 130 at 1 of 3 (providing that motions to amend pleadings must be filed "28 days after Order on motion to dismiss the Second Amended Complaint"); ECF No. 150 (Mem. Dec. & Order on Defs.' Mot. to Dismiss dated Nov. 25, 2020).

[5] ECF No. 160 at 1 of 9.

16(b). To establish "good cause," the moving party must establish that the deadline in the scheduling order could not have been met with diligence. *Colorado Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

If the movant satisfies Rule 16(b)'s good cause standard, it must then satisfy Fed. R. Civ. P. 15. Under Rule 15(a), the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Whether to provide a party leave to amend its pleadings "is within the discretion of the trial court." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotations and citation omitted). Despite Rule 15's liberal standard, the court may deny leave to amend where there is a "showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quotations and citation omitted). As shown below, LifeVantage meets the requirements of Rule 16 and Rule 15 respectively.

## ANALYSIS

**I.   Rule 16**

LifeVantage argues that good cause exists to modify the scheduling order's deadline to assert a counterclaim against Mr. Ilardo because LifeVantage did not have knowledge of the alleged breach of contract claim until the receipt of over 7,500 pages of documents on March 12 and March 16, 2021, and until LifeVantage deposed Mr. Ilardo on April 16, 2021.[6] "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information

---

[6] ECF No. 157 at 2-3 of 7.

through discovery . . . ." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Thus, LifeVantage argues, the proposed amendment satisfies the good cause standard set forth in Rule 16.

However, Plaintiffs argue that LifeVantage was aware of the facts supporting the breach of contract counterclaim much earlier than the March 2021 receipt of discovery documents and the April 2021 deposition, and, therefore, LifeVantage could have met the December 23, 2020 amendment deadline. Specifically, Plaintiffs rely on Mr. Ilardo's response to Interrogatory #11, which asked Mr. Ilardo to "[s]tate all facts in detail and specificity regarding [Mr. Ilardo's] efforts to market, promote, and sell LifeVantage Product," including the dates, times, product amounts, sale prices, discounts included, money received, and customers involved in those efforts.[7] In response, Mr. Ilardo stated, among other things, that he "cannot reasonably be expected to provide the precise dates and other details of 'all such efforts' he engaged in years ago."[8] Mr. Illardo's complaint about what he perceived to be an unreasonable discovery request is not the equivalent of an admission or statement that he failed to retain information required by the Distributor Agreement. Accordingly, this interrogatory response is not enough to put LifeVantage on notice of his purported breach for purposes of Rule 16 as to retaining receipts.

However, even if Mr. Ilardo's interrogatory response put LifeVantage on sufficient notice of his failure to retain receipts, Plaintiffs have failed to show how other grounds for breach—i.e., customer solicitation and improper representations about LifeVantage's products—were

---

[7] ECF No. 160 at 4 of 9.

[8] *Id.*

previously known in time to meet the December 2020 amendment deadline. Because the information giving rise to the counterclaim was not acquired until after the deadline to amend pleadings expired, LifeVantage could not have met the deadline despite diligent effort. Accordingly, good cause exists for leave to amend under Rule 16.

II.   **Rule 15**

The proposed amended answer satisfies Fed. R. Civ. P. 15. Rule 15 provides that, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin,* 568 F.3d at 1229 (quotations and citation omitted). Plaintiffs argue that the court should deny LifeVantage's motion for undue delay, futility, bad faith, and undue prejudice. The court will address these arguments below.

    A.   **Undue Delay**

In opposing LifeVantage's motion for leave to amend, Plaintiffs argue that LifeVantage's motion was untimely, such that the court should refuse leave to amend. In the Rule 16 analysis above, the court determined that LifeVantage could not have, with diligent effort, met the deadline to amend the pleadings. Therefore, the court also finds no undue delay under Rule 15.

    B.   **Futility**

A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). To determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the

court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001). "To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When determining plausibility, the court accepts all well-pleaded allegations in the complaint as true and views those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001).

Plaintiffs assert that LifeVantage's motion to amend is futile because LifeVantage failed to state claim for breach of contract. Under Utah law, a plaintiff must allege "(1) [the existence of] a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1254 (D. Utah 2019) (alteration in original). Here, Plaintiffs claim that the deficiency of the damages element creates futility. Accordingly, the court analyzes the sufficiency of that element only and assumes the other contract elements are sufficiently pled.

Plaintiffs posit that LifeVantage's breach of contract claim is futile because LifeVantage failed to allege damages.[9] As Plaintiffs contend, LifeVantage has offered only a boilerplate,

---

[9] ECF No. 160 at 6-7 of 9.

"conclusory recitation" of damages suffered and relief sought.[10] In response, LifeVantage articulates three arguments to support its counterclaim as not futile.[11] First, LifeVantage states that, because LifeVantage is pleading only general damages, it need assert only a general allegation of damages.[12] Second, LifeVantage argues that, per the terms of the Distributor Agreement, Mr. Ilardo "has already agreed that LifeVantage would suffer damages upon a breach."[13] Finally, LifeVantage contends that, even if LifeVantage were required to allege general damages with specificity, LifeVantage could "easily" explain how it was injured.[14] Because the court finds the first reason persuasive, only it is discussed summarily below.

The standard for pleading general damages is lenient; the Supreme Court has held that "[g]eneral damages . . . need not be alleged in detail and require no proof." *F.A.A. v. Cooper*, 566 U.S. 284, 295-96 (2012) (quotations and citation omitted). Although special damages are subject to a heightened pleading standard,[15] general damages are subject to the standard set forth in *Twombly* and *Iqbal*. *See, e.g.*, *Eagle Air Med Corp. v. Sentinel Air Med. All., LLC*, No. 2:16-CV-176-TC-EJF, 2018 WL 566835, at *4 (D. Utah Jan. 25, 2018) (analyzing the plaintiff's pleading for general damages under the standard set forth in *Iqbal* and *Twombly*). "[T]he *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading . . . and allowing complaints that

---

[10] *Id.* at 6 of 9.

[11] ECF No. 161 at 6-8 of 10.

[12] *Id.* at 7 of 10.

[13] *Id.*

[14] *Id.*

[15] Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action . . . .'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). The *Twombly/Iqbal* standard applies to an amended pleading the same as it does to an original pleading. *See, e.g.*, *Newsom v. Ottawa Cnty. Bd. Of Com'ers*, 511 F. App'x 718, 719 (10th Cir. 2013) (applying *Twombly* and *Iqbal* to a plaintiff's amended complaint). Thus, in amending its answer and asserting a counterclaim for general damages, LifeVantage's amended pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, the court must look at the factual allegations within the counterclaim and determine if they plausibly give rise to damages. This is true even if the counterclaimant resorts to a boilerplate statement of damages.

      LifeVantage's counterclaim states sufficient facts to plausibly show that it suffered damages. LifeVantage's counterclaim states that, before terminating his relationship with LifeVantage, Mr. Ilardo solicited LifeVantage's customers and distributors to leave LifeVantage and work with Mr. Ilardo at another multilevel marketing venture.[16] This alleged conduct could plausibly cause LifeVantage to suffer damages because, if true, Mr. Ilardo took distributors and customers whose departure would decrease LifeVantage's revenues and put LifeVantage at a competitive disadvantage. Thus, LifeVantage has sufficiently pled damages for purposes of stating a claim for breach of contract.[17]

---

[16] ECF No. 161 at 6 of 10.

[17] Additionally, LifeVantage's counterclaim alleges that Mr. Ilardo made "representations about LifeVantage's products that contravened the requirements set out in the Distributor Agreement." *Id.* Specifically, LifeVantage alleges that Mr. Ilardo "misrepresent[ed] the ability of LifeVantage products to prevent, mitigate and cure diseases."

## C. Bad Faith

Plaintiffs argue that LifeVantage's counterclaim is "an effort to intimidate Mr. Ilardo and chill his participation."[18] Although Plaintiffs do not state a legal standard for this argument, the court assumes that Plaintiffs' argument asserts bad faith within the parameters of Rule 15. *Bylin*, 568 F.3d at 1229.

This argument is unpersuasive. "Bad faith with regard to a Rule 15 motion can be inferred if the proposed amendment directly contradicts allegations made in the original pleading, such that the original and amended factual accounts cannot be reconciled." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, No. 10-CV-02271-PAB-BNB, 2011 WL 5593178, at *3 (D. Colo. Nov. 17, 2011) (citing *Ayon v. Gourley*, 185 F.3d 873, 1999 WL 516088, at *3 (10th Cir. 1999) (unpublished table decision)). "Bad faith may also be inferred if a party seeks leave to amend for an improper purpose," such as circumventing discovery. *Id.* (citing *Ayon*, 185 F.3d 873, 1999 WL 516088, at *3).

Applying this standard to the facts, Plaintiffs do not allege that LifeVantage's counterclaim for breach of contract directly contradicts LifeVantage's original answer. Moreover, Plaintiffs do not allege that LifeVantage asserts its counterclaim to circumvent discovery. Plaintiffs have failed to show that LifeVantage's primary purpose in filing its counterclaim is for a purpose that is outside the contractual rights that LifeVantage has against

---

ECF No. 157-1 at 71 of 118; *see also id.* at 90 of 118 (describing LifeVantage's objective to "promote the good reputation and established brands of LifeVantage and its products," as "consistent with the public interest," "to ensure that the presentation of each aspect of LifeVantage is fair, truthful, substantiated and complies with the vast and complex legal requirements of federal, state and other applicable local laws"). Assuming the facts alleged are true, Mr. Ilardo's misrepresentations also plausibly injured LifeVantage's reputation.

[18] ECF No. 160 at 7 of 9.

Mr. Ilardo. To hold otherwise would be to deprive LifeVantage of the contractual rights it enjoys in its contract with Mr. Ilardo. Accordingly, LifeVantage's counterclaim does not fail because of bad faith.

### D.    Undue Prejudice

Finally, Plaintiffs oppose LifeVantage's motion for leave to amend its answer on the grounds that LifeVantage's motion is "unfairly prejud[icial] to Plaintiffs and [a] waste [of] judicial resources."[19] The court disagrees. Plaintiffs merely recite that LifeVantage's motion is "unfairly prejudicial" but do not assert any supporting argument or facts. This is not enough, and the court does not see how allowing LifeVantage to seek vindication of its contractual rights at this stage of discovery will be sufficiently prejudicial to overcome Rule 15's liberal amendment standard.

## ORDER

For the foregoing reasons, LifeVantage's Motion for Leave to Amend its Answer to Assert Counterclaims[20] is GRANTED. LifeVantage shall file the amended answer and counterclaims within 7 days of the date of this Order.

DATED July 21, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[19] ECF No. 160 at 7 of 9.

[20] ECF No. 157.